IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

─────────────────────────────

CHRISTOPHER MORRISHAW,

               Petitioner,

        v.

DAVID ROCK, Superintendent, Upstate
Correctional Facility,

               Respondent.

Civil Action No.
9:12-CV-0748 (MAD/DEP)

─────────────────────────────

APPEARANCES:

FOR PETITIONER:

CHRISTOPHER MORRISHAW, *Pro Se*
07-A-0433
Upstate Correctional Facility
P.O. Box 2001
Malone, NY 12953

FOR RESPONDENT:

HON. ERIC T. SCHNEIDERMAN
New York State Attorney General
The Capitol
120 Broadway
New York, NY 10207

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

OF COUNSEL:

PRISCILLA I. STEWARD, ESQ.
Assistant Attorney General

<u>REPORT AND RECOMMENDATION</u>

*Pro se* petitioner Christopher Morrishaw, a New York State prison inmate, has commenced this proceeding pursuant to 28 U.S.C. § 2254 requesting federal habeas intervention following his murder conviction from 2007 in Schenectady County based on a plea of guilty. In his petition, Morrishaw argues that his guilty plea and waiver of appeal were not knowing, voluntary, and intelligent and that he received ineffective assistance of counsel in connection with the proceedings before the trial court. Petitioner also contends that the trial court erred in failing to dismiss the indictment against him as defective and that his appeal waiver was not properly signed by him. Respondent opposes Morrishaw's petition, arguing that certain of his claims are unexhausted but now procedurally forfeited, and, in any event, all of his claims lack merit.

Having considered Morrishaw's petition and applying the requisite deferential standard to the determinations made by the state courts regarding the grounds asserted by Morrishaw, I recommend that the petition be denied.

I.    BACKGROUND

Petitioner's murder conviction stems from the shooting of Jason French, an acquaintance of Morrishaw, on December 29, 2005, in a convenience store located in Schenectady, New York. Dkt. No. 11-1 at 80. As a result of the incident, which occurred while two other individuals were standing in close proximity to the victim, plaintiff was accused in Schenectady County Indictment No. B-106-18 of two counts of murder in the second degree and two counts of first degree reckless endangerment. Dkt. No. 11-2 at 19-21. On August 1, 2006, accompanied by his assigned attorney, petitioner appeared before Schenectady County Court Judge Karen A. Drago and, pursuant to a negotiated plea agreement, entered a plea of guilty to a single count of second degree murder in full satisfaction of the charges set forth in the indictment. Dkt. No. 11-1 at 69-83; Dkt. No. 11-2 at 38-51.

Prior to sentencing, represented by new counsel, petitioner moved to withdraw his guilty plea, arguing that (1) the plea was the product of pressure exerted by his former counsel and he was not afforded adequate time to consider the consequences of his plea; (2) prior counsel spoke to petitioner only about resolving the case with a plea bargain but did not discuss possible trial strategies; (3) petitioner was afraid to ask questions of

his attorney; (4) his psychological evaluation was inadequate; (5) petitioner did not understand the legal process; and (6) he did not understand the appeal waiver. Dkt. No. 11-1 at 68. At a hearing regarding petitioner's motion, held on December 4, 2006, the trial court stated that "[t]he plea minutes disclosed that [the] Court adequately apprised [petitioner] of the ramifications of pleading guilty including the rights that he would be relinquishing thereby." Dkt. No. 11-2 at 58; 11-9 at 72. The court further observed that during his plea allocution, Morrishaw stated that he had discussed the case thoroughly with his attorney – with whose services he was satisfied – he understood the consequences of the plea, and he was not coerced or threatened when the plea was entered. Dkt. No. 11-2 at 58-59. The court thus concluded that the plea was entered knowingly, voluntarily, and intelligently, and the application to withdraw it was therefore denied. Dkt. No. 11-2 at 59. Petitioner was thereafter sentenced on January 17, 2007, pursuant to the plea agreement, to an indeterminate term of incarceration of between fifteen years and life, with an additional requirement that he pay $5,970 in restitution to the family of the victim. Dkt. No. 11-2 at 61; Dkt. No. 11-9 at 74; Dkt. No. 12 at 56-57.

Once again represented by counsel, petitioner appealed his conviction to the New York Supreme Court Appellate Division, Third

Department, arguing that (1) his guilty plea and waiver of appeal were not knowing, voluntary, and intelligent because he felt pressure by his trial attorney to accept the plea offer and the trial court failed to consider his mental health issues to determine whether he had the requisite capacity to enter a lawful plea; and (2) the trial court improperly failed to dismiss the "twin count" indictment, which charged him with both intentional and depraved indifference murder. Dkt. No. 11-2 at 2-14. On November 13, 2008, a five-judge panel of the Third Department unanimously affirmed the judgment of conviction. *People v. Morrishaw*, 56 A.D. 3d 895 (3d Dep't 2008). In its decision, the appellate court reviewed the record and concluded that both petitioner's plea and his waiver of appeal were knowing, intelligent, and voluntary. *Morrishaw*, 56 A.D.3d at 896. The Third Department summarily disposed of petitioner's second argument, stating that "[d]efendant's remaining contentions, to the extent they are properly before us, have been examined and found to be lacking in merit." *Id.* at 897. Morrishaw's petition for leave to appeal that determination to the New York Court of Appeals was denied on February 24, 2009. *People v. Morrishaw*, 12 N.Y.3d 761 (2009).

On or about February 19, 2010, proceeding *pro se*, petitioner moved to vacate the judgment of conviction against him pursuant to New York

Criminal Procedure Law ("CPL") § 440.10. Dkt. No. 11-8. Petitioner argued that the judgment should be vacated on the grounds that (1) his trial attorney was ineffective for various reasons, including because counsel failed to request a mental health examination to determine whether petitioner was competent; (2) petitioner's plea was not knowing, voluntary, and intelligent; and (3) petitioner did not sign the waiver of appeal. *See generally id.* According to respondent's brief, that motion was denied on November 28, 2011. Dkt. 11-10 at 2-3; Dkt. No. 11-11 at 16-17, and leave to appeal was denied by the Third Department on March 28, 2012. Dkt. No. 11-13.

## II.    PROCEDURAL HISTORY

Petitioner commenced this proceeding on May 4, 2012, and was thereafter granted leave to proceed *in forma pauperis.* Dkt. Nos. 1, 7. Appropriately named as the respondent in Morrishaw's petition is David Rock, the superintendent of the prison facility in which he was housed at the time of filing. In his petition, Morrishaw raises four grounds for granting habeas relief, asserting that (1) his plea and waiver of appeal were not knowing, voluntary, or intelligent; (2) he received ineffective assistance of counsel leading up to and in connection with the entry of his plea; (3) the trial court improperly denied his motion to dismiss the indictment; and (4) his

signature on the appeal waiver was insufficient and ineffective as a waiver. Dkt. No. 1 at 3-4, 7-9. Respondent Rock, represented by the New York State Attorney General, answered the petition on September 28, 2012, and on that same date submitted the relevant state court records associated with petitioner's conviction and subsequent proceedings. Dkt. Nos. 10-12. Although petitioner requested and was granted an extension of time to file a reply to respondent's opposition, none was received by the court.

This matter, which is now ripe for determination, has been referred to me for the issuance of a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule 72.3(c). *See also* Fed. R. Civ. P. 72(b).

III.    DISCUSSION

    A.    Exhaustion of Remedies/Procedural Default

As a threshold matter, respondent maintains that the court need not reach the merits of petitioner's third claim related to the trial court's failure to dismiss the indictment against him. Dkt. No. 10-1 at 16. In support of that contention, the respondent notes that, in his appeal to the Third Department, plaintiff relied solely upon state statutory and case law concerning this point and did not raise any federal claims in support of that argument. *Id.* Accordingly, he argues, any federal claim associated with the

argument regarding the trial court's failure to dismiss the indictment against him was not preserved and properly presented in the first instance to state courts. *Id.*

Prior to seeking federal habeas relief, a petitioner must exhaust available state remedies or establish either an absence of available state remedies or that such remedies cannot adequately protect his rights. *Aparicio v. Artuz*, 269 F.3d 78, 89 (2d Cir. 2001) (quoting 28 U.S.C. § 2254(b)(1)); *Ellman v. Davis*, 42 F.3d 144, 147 (2d Cir. 1994), *cert. denied*, 515 U.S. 1118, 115 S.Ct. 2269 (1995). The exhaustion doctrine recognizes "respect for our dual judicial system and concern for harmonious relations between the two adjudicatory institutions." *Daye v. Attorney Gen. of N.Y.*, 696 F.2d 186, 191 (2d Cir. 1982); *see also Galdamez v. Keane*, 394 F.3d 68, 72 (2d Cir. 2005) ("Comity concerns lie at the core of the exhaustion requirement."). Though both federal and state courts are charged with securing a state criminal defendants' federal rights, the state courts must initially be given the opportunity to consider and correct any violations of federal law. *Galdamez*, 394 F.3d at 72 (citing *O'Sullivan v. Boerckel*, 526 U.S. 838, 844-45 (1999)). "The chief purposes of the exhaustion doctrine would be frustrated if the federal habeas court were to rule on a claim whose fundamental legal basis was substantially different from that asserted in

state court." *Daye*, 696 F.2d at 192 (footnote omitted).

This exhaustion requirement is satisfied if the federal claim has been "'fairly present[ed]'" to the state court. *Dorsey v. Kelly*, 112 F.3d 50, 52 (2d Cir. 1997) (quoting *Picard v. Connor*, 404 U.S. 270, 275 (1971)). A claim has been "fairly presented" if the state court was apprised of "both the factual and the legal premises of the claim [the petitioner] asserts in federal court." *Daye*, 696 F.2d at 191. Thus, "the nature or presentation of the claim must have been likely to alert the court to the claim's federal nature." *Id.* at 192.

When a claim has never been presented to a state court, a federal court may find that there is an absence of available state corrective process under section 2254(b) "if it is clear that the unexhausted claim is procedurally barred by state law and, as such, its presentation in the state forum would be futile." *Aparicio*, 269 F.3d at 90 (citing *Reyes v. Keane*, 118 F.3d 136, 139 (2d Cir. 1997)); *Lurie v. Wittner*, 228 F.3d 113, 124 (2d Cir. 2000) (federal court may address merits of a habeas petition containing unexhausted claims where there is no further state proceeding for petitioner to pursue or where further pursuit would be futile). In this instance, petitioner did not present his federal claim regarding the indictment to any state court. *See generally* Dkt. No. 11-2 at 2-14; Dkt. No. 11-5 at 3-13; Dkt. No. 11-8 at

[2-13](#); [Dkt. No. 11-11 at 6-14](#). I must therefore determine whether it would be futile for him to present it at this time.

Petitioner cannot now file an appeal with the New York State Appellate Division in order to advance his claim regarding the indictment because, in New York, a defendant is "entitled to one (and only one) appeal to the Appellate Division." *Aparicio*, 269 F.3d at 91. Moreover, because "New York does not otherwise permit collateral attacks on a conviction when the defendant unjustifiably failed to raise the issue on direct appeal," *id.* (citing CPL § 440.10(2)(c)), petitioner could not now properly raise this claim, which is based upon the record, in an Article 440 motion. *Aparicio*, 269 F.3d at 91; *Bossett v. Walker*, 41 F.3d 825, 829 (2d Cir. 1994). This claim is therefore "deemed exhausted" for purposes of petitioner's habeas application. *Spence v. Superintendent, Great Meadow Corr. Fac.*, 219 F.3d 162, 170 (2d Cir. 2000); *Senor v. Greiner*, No. 00-CV-5673, 2002 WL 31102612, at *10 (E.D.N.Y. Sept. 18, 2002).[1]

Petitioner's failure to raise his federal law claims before the state court constitutes a potentially fatal default.This court may not engage in habeas review of his procedurally defaulted claim unless he demonstrates either (1)

---

[1]     Copies of all unreported decisions cited in this document have been appended for the convenience of the *pro se* plaintiff.

10

good cause for and actual prejudice resulting from his procedural default, or (2) that "he is actually innocent."[2] *Bousley v. United* States, 523 U.S. 614, 622 (1998); *accord, Clark v. Perez*, 510 F.3d 382, 393 (2d Cir. 2008). To establish "cause" sufficient to excuse a procedural default, a petitioner must show that some objective external factor impeded his ability to comply with the relevant procedural rule. *Coleman v. Thompson*, 501 U.S. 722, 753 (1991) (citing *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). Examples of such external mitigating circumstances can include ineffective assistance of counsel, "a showing that the factual or legal basis for a claim was not reasonably available to counsel, or that some interference by officials made compliance impracticable."[3] *Murray*, 477 U.S. at 488 (quotation marks and citations omitted); *Coleman*, 501 U.S. at 753. When a petitioner has failed to establish adequate cause for his procedural default, the court need not proceed to examine the issue of prejudice because federal habeas relief is generally unavailable as to procedurally defaulted claims unless both cause

---

[2]    Because petitioner in this case has not claimed actual innocence, and there is nothing before me to suggest that this exception applies, I have not addressed it in this report. *See Clark*, 510 F.3d at 393 (addressing cause and prejudice because "actual innocence [was] not in issue").

[3]    It should be noted, however, that "[a]ttorney ignorance or inadvertence is not 'cause' because the attorney is the petitioner's agent when acting, or failing to act, in furtherance of the litigation, and the petitioner must 'bear the risk of attorney error.'" *Coleman*, 501 U.S. at 753 (quoting *Murray*, 477 U.S. at 488).

and prejudice are demonstrated. *Stepney v. Lopes*, 760 F.2d 40, 45 (2d Cir. 1985); *accord, Long v. Lord*, No. 03-CV-0461, 2006 WL 1977435, at *6 (N.D.N.Y. March 21, 2006) (McCurn, J.).

In this instance the petitioner has not offered good cause for his procedurally default with respect to this "twin count" indictment claim. Accordingly, the court need not address the question of actual prejudice. In addition, petitioner has failed to set forth facts demonstrating that the denial of habeas relief on this ground would leave unremedied a fundamental miscarriage of justice. I therefore recommend that petitioner's third ground be rejected on this procedural basis, without reaching its merits.[4]

B.     Standard of Review on the Merits

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may grant habeas corpus relief with respect to a claim adjudicated on the merits in state court only if, based upon the record

---

[4]     Were the court to reach the merits of this ground, I would nonetheless still recommend that it be rejected in light of my finding, discussed below, that petitioner entered his guilty plea knowingly, voluntarily, and intelligently. The entry of a guilty plea precludes "any independent claim relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea," so long as the guilty plea was knowing, voluntary, and intelligent. *Tollett v. Henderson*, 411 U.S. 258, 267 (1973); *see also United States v. Garcia*, 339 F.3d 116, 117 (2d Cir. 2003) ("It is well settled that a defendant who knowingly and voluntarily enters a plea waives all non-jurisdictional defects in the prior proceedings."); *United States v. Coffin,* 76 F.3d 494, 497 (2d Cir. 1996) ("A defendant who pleads guilty unconditionally while represented by counsel may not assert independent claims relating to events occurring prior to the entry of a guilty plea.")

before the state court, the adjudication of the claim (1) was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *Cullen v. Pinholster*, --- U.S. ----, 131 S. Ct. 1388, 1398, 1400 (2011) (citing 28 U.S.C. § 2254(d)); *Premo v. Moore*, --- U.S. ----, 131 S. Ct. 733, 739 (2011); *Thibodeau v. Portuondo*, 486 F.3d 61 (2d Cir. 2007) (Sotomayor, J.). The AEDPA "'imposes a highly deferential standard for evaluating state-court rulings' and 'demands that state-court decisions be given the benefit of the doubt.'" *Felkner v. Jackson*, --- U.S. ----, 131 S. Ct. 1305, 1307 (2011) (*per curiam*) (quoting *Renico v. Lett*, 559 U.S. 766, 773 (2010)); *accord, Cullen*, 131 S. Ct. at 1398. Federal habeas courts must presume that the state court's factual findings are correct "unless applicants rebut this presumption with 'clear and convincing evidence.'" *Schriro v. Landrigan*, 550 U.S. 465, 473-74 (2007) (quoting § 2254(e)(1)); *see also Boyette v. Lefevre*, 246 F.3d 76, 88 (2d Cir. 2001). "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable – a substantially higher threshold." *Schriro*, 550 U.S. at 473 (citing *Williams v. Taylor*, 529 U.S. 362, 410 (2000)).

As required by section 2254, on federal habeas review, a court may only consider claims that have been adjudicated on the merits by the state courts. 28 U.S.C. § 2254(d); *Cullen*, 131 S. Ct. at 1398; *Wash. v. Schriver*, 255 F.3d 45, 52-55 (2d Cir. 2001). The Second Circuit has held that, when a state court adjudicates a claim on the merits, "a federal habeas court must defer in the manner prescribed by 28 U.S.C. § 2254(d)(1) to the state court's decision on the federal claim – even if the state court does not explicitly refer to either the federal claim or to relevant federal case law." *Sellan v. Kuhlman*, 261 F.3d 303, 312 (2d Cir. 2001).

C.    Petitioner's Guilty Plea and Waiver of Appeal Claim

To varying degrees, grounds one, two, and four of Morrishaw's petition depend upon whether the entry of his guilty plea and waiver of appeal were voluntary, knowing, and intelligent. *See generally* Dkt. No. 1. Respondent argues that the Appellate Division's decision, in which it rejected petitioner's claim, *Morrishaw*, 56 A.D.3d 95, 896-97, is neither contrary to nor an unreasonable application of clearly established Supreme Court precedent. Dkt. No. 10-1 at 21-26.

1.    Clearly Established Supreme Court Precedent

The standard governing the acceptance of guilty pleas is neither recently evolved nor controversial. "A guilty plea operates as a waiver of important rights, and is valid only if done voluntarily, knowingly, and intelligently, 'with sufficient awareness of the relevant circumstances and likely consequences.'" *Bradshaw v. Stumpf*, 545 U.S. 175, 183 (2005) (quoting *Brady v. United States*, 397 U.S. 742, 748 (1970)); *see also Hill v. Lockhart*, 474 U.S. 52, 56 (1985) ("The longstanding test for determining the validity of a guilty plea is 'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" (quoting *N.C. v. Alford*, 400 U.S. 25, 31 (1970)). The court may determine whether a defendant's guilty plea was knowing, intelligent, and voluntary by examining the relevant record for whether the defendant (1) was competent to proceed, (2) was made aware of the nature of the charges against him, (3) had a rational and factual understanding of the proceedings against him, and (4) was cognizant of the constitutional protections relinquished by entering a guilty plea. *Oyague v. Artuz*, 393 F.3d 99, 106 (2d Cir. 2004) (citing cases). Although the question of whether a defendant's guilty plea was voluntarily is ultimately a legal one that "merit[s] independent consideration in a federal habeas proceeding," the

"components of voluntariness have been held to constitute, or at least depend on, questions of fact the state court determinations of which are subject to the requirements of [28 U.S.C. §] 2254(d)." *Matusiak v. Kelly*, 786 F.2d 536, 543, 544 (2d Cir. 1986); *accord, Oyague*, 393 F.3d at 104.

> 2. Contrary to or Unreasonable Application of Clearly Established Supreme Court Precedent

The evidence in this case is fully supportive of the Third Department's finding that the petitioner's guilty plea to a felony charge was knowing, voluntary, and intelligent. As a result of plea negotiations, petitioner was permitted to plead guilty to a single count of second-degree murder for which it was agreed he would be sentenced to a minimum of fifteen years to life, thereby avoiding a possible prison sentence of up to twenty-five years to life. Dkt. No. 11-1 at 70-71; Dkt. No. 11-2 at 39-40. The record before the court reflects that the evidence against the petitioner was strong, and included two witnesses to the crime and petitioner's confession. Dkt. No. 11-1 at 25, 28, 93, 96-101, 102-04. During the plea allocution, as the Third Department noted, petitioner, *inter alia*, (1) was fully advised of his rights, (2) denied being threatened or coerced into pleading guilty, (3) indicated that he had thoroughly discussed the case and his plea with counsel, and (4) was satisfied with his attorney's representation. Dkt. No. 11-1 at 69-83; Dkt. No. 11-2 at 38-52. With respect to plaintiff's contention that his waiver

of his right to appeal was invalid because he did not sign his full name, [Dkt. No. 1 at 4](), this claim is not cognizable on federal habeas review because, where the defendant relinquishes the right voluntarily, intelligently, and knowingly on the record as part of a plea allocution, there is no constitutional requirement that a waiver of the right to appeal be provided in writing. In this case, during the plea hearing, the following exchange occurred regarding petitioner's waiver of his right to appeal:

> THE COURT: Do you understand that as part of this plea bargain, you're being asked to waive or give up your right to appeal?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Do you do so willingly and voluntarily?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Could you please execute that.
>
> MR. CARUSO: Can I just have a moment, Judge.
>
> (Pause in the proceedings.)
>
> MR. CARUSO: Your Honor, I have gone over the Waiver of Right to Appeal document with Mr. Morrishaw. I went over it in depth with him yesterday at the jail. I have a conformed copy and I told him we would have to sign it in open court. I advised him with regard to his

> appellate rights. I believe he
> understands that and he agrees to
> be bound by the document and he
> did just sign that here in open court
> today.

> THE COURT: Thank you. Let the record reflect
> that the defendant has signed his
> name 'Christopher M.' I witnessed
> it. It's been signed by his attorney,
> Mr. Caruso. It's been dated.
> Do you have any questions
> about this Waiver of Right to
> Appeal, sir?

> THE DEFENDANT: No.

> THE COURT: Then I will file the Waiver of Right
> to Appeal with the clerk of the court
> and ask that it be made part of the
> court's files.

Dkt. No. 11-1 at 77-79; Dkt. No. 11-2 at 46-48.

Based upon the foregoing, and the entire record now before, which I
have carefully reviewed, I recommend a finding that the Third Department's
determination that defendant's plea and waiver of appeal were valid was
neither contrary to nor an unreasonable application of clearly established
Supreme Court precedent.


D.   Petitioner's Ineffective Assistance of Counsel Claim

In ground two of his petition, Morrishaw argues that he received

ineffective assistance of counsel based on allegations that his attorney

failed to explore his psychological issues and adequately counsel him

concerning the plea bargain offered by the prosecution. Dkt. No. 1 at 4, 8.

Respondent maintains that the trial court's determination, on petitioner's

CPL § 440.10 motion, that petitioner received effective assistance of

counsel was neither contrary to nor an unreasonable application of clearly

established Supreme Court precedent. Dkt. No. 10-1 at 21.

1. Clearly Established Supreme Court Precedent

Under the well-established standard governing ineffective assistance

of counsel claims,

> the defendant must show that counsel's performance
> was deficient. This requires showing that counsel
> made errors so serious that counsel was not
> functioning as the 'counsel' guaranteed the
> defendant by the Sixth Amendment. Second, the
> defendant must show that the deficient performance
> prejudiced the defense. This requires showing that
> counsel's errors were so serious as to deprive the
> defendant of a fair trial, a trial whose result is reliable.

*Strickland v. Wash.*, 466 U.S. 668, 687 (1984); *accord, Murden v. Artuz*, 497

F.3d 178, 198 (2d Cir. 2007).

To be constitutionally deficient, the attorney's conduct must fall

"outside the wide range of professionally competent assistance." *Strickland,*

466 U.S. at 690; *accord, Rivas v. Fischer*, 780 F.3d 529, 547 (2d Cir. 2015).

An attorney's performance is judged against this standard in light of the totality of the circumstances and from the perspective of counsel at the time of trial, with every effort made to "eliminate the distorting effects of hindsight[.]" *Strickland*, 466 U.S. at 689; *see also Rivas*, 780 F.3d at 547 (noting the court's "scrutiny of counsel's performance must be 'highly deferential'" (quoting *Strickland*, 466 U.S. at 689)).

Addressing the second prong of the *Strickland* test, courts have generally held that prejudice is established by showing that there is a "reasonable probability" that, but for the attorney's deficient conduct, "the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694; *see also Murden*, 497 F.3d at 198 ("Under *Strickland*, a defendant must show that . . . there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." (quotation marks omitted)).

2.  <u>Contrary to or Unreasonable Application of Clearly Established Supreme Court Precedent</u>

In its decision denying petitioner's CPL § 440.10 motion, the trial court

noted that Morrishaw's attorney made appropriate pretrial motions and negotiated a favorable plea bargain, and concluded that, "in reviewing defendant's representation in totality . . .[,] he was afforded effective assistance of counsel." Dkt. No. 11-10 at 2. Dkt. No. 11-11 at 16. The court must examine that decision to determine whether it was either contrary to or an unreasonable application of clearly established Supreme Court precedent.

Petitioner principally argues that his attorney, Mark J. Caruso, Esq., deprived him of meaningful representation by counseling him to accept the plea bargain offered to him. Dkt. No. 1 at 4, 8. As was previously noted, however, the plea bargain was not unreasonable, particularly given the strength of the evidence against petitioner and the sentence he faced if convicted at trial. It is true that petitioner apparently suffers from psychological impairments that, in theory, could have interfered with his ability to understand the proceedings against him and enter a knowing, voluntary, and intelligent plea. *See, e.g., id.* at 4 ("Defendant's assigned counsel was aware that defendant suffered with [sic] mental disorders from his very young childhood and was in and out of mental institutions[.]"). That issue, however, was explored by plaintiff's counsel prior to petitioner's plea hearings and, during the course of the plea allocution, the following

exchange occurred:

THE COURT: Do you claim to have any mental health issues?

THE DEFENDANT: Yes.

THE COURT: And do you know what they are, if any?

MR. CARUSO: Judge, as we discussed at the bench, there was an issue early on in this case that was presented to me that caused me to look into Mr. Morrishaw's psychiatric history, and I can tell the Court that from an early age, I believe ages five to 18, Mr. Morrishaw has been in multiple psychiatric hospitals and care facilities until he signed himself out at age 18 from an institute called Linden Hall. Throughout the course of my review of these documents, I have seen a couple of different diagnoses. One of them talked about conduct disorder. Another report talked about ADHD.

I did not see any other illnesses or ailments that are common in the DSM-IV, but again, based upon this, I did have him looked at by Dr. Thalmann, in hopes of trying to see if there would be a psychiatric defense that was

22

available. Unfortunately, or
fortunately, depending on
how you look at it, Dr.
Thalmann had indicated
there was no psychosis there
and we could not make out a
psychiatric defense on his
behalf. So, that would be
what I would say about the
issues of mental health that
[petitioner] has exhibited
throughout his life.

Dkt. No. 11-1 at 73-74; Dkt. No. 42-43. Based on this representation from

petitioner's counsel, and having thoroughly reviewed the entire record in

this case, I am unable to discern any aspect in which counsel's performance

on petitioner's behalf failed to meet the *Strickland* standard. I therefore

recommend a finding that the trial court's determination that plaintiff was not

denied effective assistance of counsel be upheld as neither contrary to nor

an unreasonable application of clearly established Supreme Court

precedent.

### E.    Certificate of Appealability

To appeal a final order denying a request by a state prisoner for

habeas relief, a petitioner must obtain from the court a certificate of

appealability ("COA"). 28 U.S.C. § 2253(c)(1)(A); *see also* Fed. R. App. P.

22(b)(1) ("[T]he applicant cannot take an appeal unless a circuit justice or a circuit or district judge issues a certificate of appealability under 28 U.S.C. § 2253(c)."). In the absence of a COA, a federal court of appeals lacks jurisdiction to entertain an appeal from the denial of a habeas petition. *Hoffler v. Bezio*, 726 F.3d 144, 152 (2d Cir. 2013). A COA may issue only "if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *Hoffler*, 726 F.3d at 154. A petitioner may demonstrate a "substantial showing" if "the issues are debatable among jurists of reason; . . . a court could resolve the issues in a different manner; or . . . the questions are adequate to deserve encouragement to proceed further."[5] *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983) (quotation marks omitted). In this instance, I conclude that the petitioner has not made a substantial showing of the denial of a constitutional right and therefore recommend against the issuance of a COA.

IV.    SUMMARY AND RECOMMENDATION

Petitioner's claim that the trial court in this case improperly refused to

---

[5]    A similar standard applies when a COA is sought to challenge the denial of a habeas petition on a procedural basis. *See Slack v. McDaniel*, 529 U.S. 473, 478 (2000) ("[A] COA should issue . . . if the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.").

dismiss the indictment against him based upon the inclusion of two murder counts was not fully exhausted by the petitioner, and, in any event, is without merit in light of his intervening guilty plea. In addition, based on my review of the state court record, I find that the Appellate Division's conclusion that the guilty plea and waiver of appeal were voluntary, knowing, and intelligent was neither contrary to nor an unreasonable application of clearly established Supreme Court precedent. Similarly, I conclude that the trial court's determination that petitioner received constitutionally mandated effective assistance of counsel was also neither contrary to nor unreasonable application of clearly established Supreme Court precedent.

Based upon the foregoing, it is therefore hereby respectfully

RECOMMENDED that the petition in this matter be DENIED and DISMISSED in all respects; and it further hereby

RECOMMENDED, based upon my finding that Morrishaw has not made a "substantial showing of the denial of a constitutional right" pursuant to 28 U.S.C. § 2253(c)(2), that a certificate of appealability not be issued with respect to any of the claims set forth in his petition.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections must be filed with

the clerk of the court within FOURTEEN days of service of this report.

FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE

APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72;

*Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993).

It is hereby ORDERED that the clerk of the court serve a copy of this

report and recommendation upon the parties in accordance with this court's

local rules.

Dated:     August 14, 2015
           Syracuse, New York

David E. Peebles
U.S. Magistrate Judge


Not Reported in F.Supp.2d, 2002 WL 31102612 (E.D.N.Y.)
(Cite as: 2002 WL 31102612 (E.D.N.Y.))

Only the Westlaw citation is currently available.

United States District Court, E.D. New York.
Chanel SENOR, Petitioner,
v.
Charles GREINER, Supt., Respondent.
**No. 00-CV-5673JG.**

Sept. 18, 2002.

Following affirmance of his convictions for second-degree murder and criminal possession of a weapon, state prisoner filed petition for federal habeas corpus relief. The District Court, Gleeson, J., held that: (1) prisoner's petition was time-barred; (2) prisoner failed to demonstrate that his trial counsel's actions or inactions amounted to constitutionally inadequate performance; (3) prisoner failed to demonstrate that his appellate counsel's actions amounted to constitutionally inadequate performance; (4) claim that police seized prisoner without probable cause was barred from federal review; (5) even if court were to consider claim of lack of probable cause, the claim lacked merit; (6) claim that prisoner did not voluntarily accompany police to the precinct was barred from habeas review; (7) even if prosecutor's questioning of prisoner about his prior drug conviction was a *Sandoval* violation, prisoner failed to show that it deprived him of a constitutionally recognized right; and (8) claim regarding the alleged *Sandoval* violation was procedurally defaulted.

Petition denied.

West Headnotes

**[1] Habeas Corpus 197 603**

197 Habeas Corpus
    197III Jurisdiction, Proceedings, and Relief
        197III(A) In General
            197k603 k. Laches or Delay. Most Cited Cases
State prisoner's petition for federal habeas corpus relief was time-barred; although one-year grace period from the effective date of the Antiterrorism and Effective Death Penalty Act (AEDPA) was tolled during periods that prisoner's motions to reargue or appeal his previous adverse rulings were pending in state appellate courts, some 1,184 days passed from the AEDPA's effective date until the earliest date on which prisoner could have been credited with filing his petition. 28 U.S.C.A. § 2244(d)(1)(a).

**[2] Criminal Law 110 1930**

110 Criminal Law
    110XXXI Counsel
        110XXXI(C) Adequacy of Representation
            110XXXI(C)2 Particular Cases and Issues
                110k1921 Introduction of and Objections to Evidence at Trial
                    110k1930 k. Identification. Most Cited Cases
    (Formerly 110k641.13(6))
Trial counsel's failure to request *Dunaway* hearing to challenge lineup identifications, after purportedly eliciting evidence that police stopped defendant without probable cause, did not amount to constitutionally inadequate performance; only witness who testified at *Wade* hearing mentioned nothing to suggest that he and his partner had stopped and questioned defendant improperly, defendant

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2002 WL 31102612 (E.D.N.Y.)
(Cite as: 2002 WL 31102612 (E.D.N.Y.))

pointed to no evidence in attorney's possession at conclusion of *Wade* hearing that would have sustained his claim that police lacked probable cause to detain him, and defendant failed to show that, had *Dunaway* hearing been requested, reasonable probability existed that court would have granted hearing and suppressed lineup identifications. U.S.C.A. Const.Amend. 6.

**[3] Criminal Law 110 ☞ 1951**

110 Criminal Law
    110XXXI Counsel
        110XXXI(C) Adequacy of Representation
            110XXXI(C)2 Particular Cases and Issues
                110k1951 k. Deliberations and Verdict.
Most Cited Cases
    (Formerly 110k641.13(2.1))
Trial counsel's failure to move to set aside verdict, after defendant alerted him to possibility that defendant had known one of his jurors in high school, did not amount to constitutionally inadequate performance; defendant's claim that he knew juror was unsupported, court could not conceive of how claim, even if true, afforded a basis for relief for defendant, and defendant failed to show that, had attorney moved to set aside verdict, court would have granted the motion. U.S.C.A. Const.Amend. 6.

**[4] Criminal Law 110 ☞ 1968**

110 Criminal Law
    110XXXI Counsel
        110XXXI(C) Adequacy of Representation
            110XXXI(C)2 Particular Cases and Issues
            110k1966 Appeal
                110k1968 k. Preservation of Error for Appeal. Most Cited Cases
    (Formerly 110k641.13(7))

Defendant failed to demonstrate that appellate counsel's failure to brief on appeal defendant's claim of lack of probable cause with respect to his arrest amounted to constitutionally inadequate performance; claim was both unpreserved for appellate review and meritless, and so the decision to forgo pursuing it on appeal did not fall below any standard of reasonableness, and, in any event, appellate court considered and rejected that very claim when defendant asserted it in his pro se supplemental brief. U.S.C.A. Const.Amend. 6.

**[5] Habeas Corpus 197 ☞ 366**

197 Habeas Corpus
    197I In General
        197I(D) Federal Court Review of Petitions by State Prisoners
        197I(D)4 Sufficiency of Presentation of Issue or Utilization of State Remedy
            197k362 Particular Remedies or Proceedings
                197k366 k. Direct Review; Appeal or Error. Most Cited Cases

**Habeas Corpus 197 ☞ 378**

197 Habeas Corpus
    197I In General
        197I(D) Federal Court Review of Petitions by State Prisoners
        197I(D)4 Sufficiency of Presentation of Issue or Utilization of State Remedy
            197k374 Availability and Effectiveness of State Remedies
                197k378 k. Availability at Time of Petition. Most Cited Cases
Federal habeas petitioner's claim, that police seized him

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2002 WL 31102612 (E.D.N.Y.)
(Cite as: 2002 WL 31102612 (E.D.N.Y.))

without probable cause, was barred from federal review where petitioner failed to exhaust it in the state courts; claim was presented on direct appeal in petitioner's pro se supplemental brief, appellate court rejected claim as either not preserved or without merit, petitioner failed to apply for leave to appeal from the affirmance of his conviction, claim thus was unexhausted, time limit for exhausting claim had expired, petitioner failed to show cause and resulting prejudice for failure to appeal decision affirming his conviction, and federal court's refusal to consider claim would not result in miscarriage of justice.

**[6] Habeas Corpus 197 &#9756;&#8212; 366**

197 Habeas Corpus
   197I In General
      197I(D) Federal Court Review of Petitions by State Prisoners
         197I(D)4 Sufficiency of Presentation of Issue or Utilization of State Remedy
            197k362 Particular Remedies or Proceedings
            197k366 k. Direct Review; Appeal or Error. Most Cited Cases

**Habeas Corpus 197 &#9756;&#8212; 401**

197 Habeas Corpus
   197I In General
      197I(D) Federal Court Review of Petitions by State Prisoners
         197I(D)5 Availability of Remedy Despite Procedural Default or Want of Exhaustion
            197k401 k. In General. Most Cited Cases
Federal habeas petitioner's claim, that he did not voluntarily accompany arresting officers to the precinct, was barred from federal habeas review where the state

court denied it based on a state procedural default, which constituted an independent and adequate state ground; state court held that claim was procedurally barred under state law because petitioner based it on matters that appeared in the record but neither raised the claim on direct appeal nor offered a reasonable excuse for having failed to do so, appellate court denied leave to appeal matter, petitioner did not show cause and resulting prejudice for the default, and miscarriage of justice would not result from federal court's failure to review claim.

**[7] Habeas Corpus 197 &#9756;&#8212; 495**

197 Habeas Corpus
   197II Grounds for Relief; Illegality of Restraint
      197II(B) Particular Defects and Authority for Detention in General
         197k495 k. Witnesses; Examination. Most Cited Cases
Even if prosecutor's questioning of petitioner about his prior drug conviction was a *Sandoval* violation, petitioner failed to show that it deprived him of a constitutionally recognized right, as required for the evidentiary error to be cognizable under federal habeas corpus review; given abundance of evidence pointing to petitioner's guilt, petitioner failed to show that the ruling influenced the jury's verdict in any way, and petitioner's claim of a *Sandoval* violation lacked merit, as defense counsel opened the door to prosecutor's questioning, and it was defense counsel, not prosecutor, who elicited the facts underlying petitioner's prior felony conviction.

**[8] Habeas Corpus 197 &#9756;&#8212; 366**

197 Habeas Corpus
   197I In General
      197I(D) Federal Court Review of Petitions by

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2002 WL 31102612 (E.D.N.Y.)
(Cite as: 2002 WL 31102612 (E.D.N.Y.))

State Prisoners
      197I(D)4 Sufficiency of Presentation of Issue or Utilization of State Remedy
        197k362 Particular Remedies or Proceedings
        197k366 k. Direct Review; Appeal or Error. Most Cited Cases

**Habeas Corpus 197 ☞ 368.1**

197 Habeas Corpus
  197I In General
    197I(D) Federal Court Review of Petitions by State Prisoners
      197I(D)4 Sufficiency of Presentation of Issue or Utilization of State Remedy
        197k368 Necessity for Repetition or Pursuit of Several Remedies
        197k368.1 k. In General. Most Cited Cases

**Habeas Corpus 197 ☞ 378**

197 Habeas Corpus
  197I In General
    197I(D) Federal Court Review of Petitions by State Prisoners
      197I(D)4 Sufficiency of Presentation of Issue or Utilization of State Remedy
        197k374 Availability and Effectiveness of State Remedies
        197k378 k. Availability at Time of Petition. Most Cited Cases

Federal habeas petitioner's claim, that prosecutor's questioning of him constituted a *Sandoval* violation, was procedurally defaulted; petitioner asserted claim on direct appeal, but failed to include it in his application for leave to appeal further or in any of his other motions, so that claim was unexhausted, claim could no longer be exhausted as 30-day period to make application for leave to appeal had expired, petitioner failed to show cause and resulting prejudice, and federal court's failure to consider claim would not result in miscarriage of justice.

Chanel Senor, Great Meadow Correctional Facility, Comstock, Petitioner Pro Se.

Charles J. Hynes, District Attorney, Kings County, Brooklyn, By Victor Barall, Assistant District Attorney, for Respondent.

MEMORANDUM AND ORDER

GLEESON, District J.

**\*1** On January 10, 1994, a jury in Kings County found petitioner Chanel Senor guilty of murder in the second degree (N.Y. Penal Law § 125.25[1] ) and criminal possession of a weapon in the second degree (N.Y. Penal Law § 265.03). Senor was sentenced to concurrent terms of imprisonment of twenty years to life for the murder conviction and two to six years for the weapon possession conviction. He is currently incarcerated pursuant to that judgment. He now petitions this Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, asserting the following claims: (1) his trial counsel failed to provide him effective assistance; (2) his appellate counsel failed to provide him effective assistance; (3) the police seized him without probable cause, violating his Fourth Amendment rights; (4) he did not voluntarily consent to accompany the arresting officers to the precinct; and (5) the prosecution's failure to turn over a prior statement of a prospective witness and its violation of the court's ruling in a pre-trial hearing deprived him of his right to a fair trial.

Not Reported in F.Supp.2d, 2002 WL 31102612 (E.D.N.Y.)
(Cite as: 2002 WL 31102612 (E.D.N.Y.))

For the reasons set forth below, the petition is denied.

## BACKGROUND

On the evening of January 10, 1991, Senor, carrying two guns, approached Queran Horton, Nekia Washington, and Daverson Maynard as they were walking in front of 1184 Halsey Street in Brooklyn. Senor pointed one gun at Maynard's chest and the other at Horton's back. Upon feeling the gun in his back, Horton turned around, and Senor shot him in the chest, killing him. Senor then fled.

Detective Anthony Burzotta, investigating the crime, subsequently composed a general description of the individual who shot Horton based on information provided by Maynard and another witness, Roberto Colon. He also learned that a man matching the description of the shooter frequented the corner of Knickerbocker and Putnam Avenues, in Brooklyn. On January 30, 1991, Detective Burzotta went with his partner to that location, where they noticed Senor, who appeared to fit the description of the shooter. Detective Burzotta and his partner stopped Senor and questioned him. They then brought Senor to the precinct station house, where they placed him in two separate lineups. From those lineups, Washington and Maynard independently identified Senor as the individual who shot Horton. Burzotta consequently arrested Senor, and the Kings County District Attorney charged him with murder in the second degree and criminal possession of a weapon in the second and third degrees.

Senor went to trial on these charges in July 1992. The jury deadlocked, and on July 10, 1992, the trial court declared a mistrial. In January 1994, Senor faced a second trial on the same charges. At the conclusion of that trial, the jury found Senor guilty of murder in the second degree and criminal possession of a weapon in the second degree. The court sentenced him as described above.

On February 3, 1994, Senor filed a timely notice of appeal, arguing that (1) the prosecution's failure to turn over a prospective witness's prior statement deprived him of a fair trial; (2) when cross-examining Senor, the prosecution violated the court's pre-trial ruling, thereby depriving him of a fair trial; and (3) the murder conviction was against the weight of the evidence. Senor later filed a *pro se* supplemental brief claiming that (1) the police seized him in violation of his Fourth Amendment rights when they surrounded him without probable cause or exigency and took him to the precinct, and (2) the police testimony regarding his arrest was unworthy of belief due to material inconsistencies. On November 6, 1995, the Appellate Division affirmed Senor's judgment of conviction, finding that the verdict was not against the weight of the evidence and that Senor's remaining claims, including those raised in his *pro se* supplemental brief, were either unpreserved for appellate review or without merit. *See People v. Senor, 221 A.D.2d 384, 635 N.Y.S.2d 480 (2d Dep't 1995).*[FN1]

> FN1. Senor states that he sought leave to appeal the Appellate Division's November 6, 1995 decision affirming his conviction. As support, he cites a certificate from the New York Court of Appeals, dated June 19, 1996, that denies him leave to appeal. That certificate, however, dismissed Senor's application for leave to appeal a subsequent May 8, 1996, decision by the Appellate Division. There is nothing in the record to indicate that Senor sought leave to appeal the Appellate Division's November 6, 1995 decision affirming his conviction.

**\*2** Meanwhile, on September 13, 1995, Senor, proceeding *pro se,* moved to vacate his judgment of conviction

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2002 WL 31102612 (E.D.N.Y.)
(Cite as: 2002 WL 31102612 (E.D.N.Y.))

pursuant to N.Y.Crim. Proc. Law § 440.10(1)(d) and (h), asserting the following: (1) the police violated his constitutional rights by seizing him without probable cause: (2) his acquiescence in accompanying the police to the precinct did not constitute voluntarily consent and thus did not justify an otherwise unlawful police intrusion; (3) his trial counsel denied him effective assistance; and (4) the sentence should be modified because it punished him for exercising his right to a jury trial. The court denied his § 440 motion on December 21, 1995. It stated that his claim that the police seized him without probable cause was procedurally barred because the Appellate Division had determined it previously on the merits and because Senor never requested a hearing to test the probable cause issue. The court also found Senor's claims that he did not consent to accompany the police to the precinct and that he received ineffective assistance of counsel to be procedurally barred because he did not raise them on direct appeal and provided no justification for having failed to do so. Moreover, the court stated that Senor's ineffective assistance claim lacked merit. Finally, the court dismissed Senor's claim regarding his sentence because it did not relate to the validity of his conviction.

On November 16, 1995, while his § 440 motion was pending, Senor filed what the Appellate Division deemed to be a motion for reargument of his appeal and an application for a writ of error *coram nobis,* in which he asserted a claim of ineffective assistance of appellate counsel. Then, on January 3, 1996, Senor requested leave to appeal the denial of his § 440 motion and to consolidate that application with his motion for reargument and his *coram nobis* petition. On February 20, 1996, the Appellate Division denied Senor's application for a writ of error *coram nobis,* stating that petitioner had failed to establish that he was denied effective assistance of appellate counsel. *See People v. Senor,* 224 A.D.2d 646, 639 N.Y.S.2d 716 (2d Dep't 1996). In a separate order, also dated February 20, 1996, the Appellate Division denied Senor's motion to reargue his appeal. *See People v. Senor,*

No. 94-01311, slip op. at 1 (2d Dep't Feb. 20, 1996). On February 22, 1996, the Appellate Division denied Senor's leave to appeal the denial of his § 440 motion.

On March 29, 1996, Senor filed an application to reargue the denials of (1) his motion to reargue his appeal; (2) his application for leave to appeal the denial of his § 440 motion; and (3) his application to consolidate these motions with his application for a writ of error *coram nobis.* On May 8, 1996, the Appellate Division denied Senor's motion, and on June 19, 1996, the Court of Appeals denied Senor leave to appeal that decision. *See People v. Senor,* 88 N.Y.2d 942, 647 N.Y.S.2d 175, 670 N.E.2d 459 (1996).

On March 6, 1997, Senor filed a second *pro se* motion to vacate his conviction, pursuant to N.Y.Crim. Proc. Law § 440.10(1)(g). He contended that he had discovered new evidence, namely, the unsworn statements of Richard Umana. On May 1, 1997, Senor filed a third § 440 motion, again claiming that he had discovered new evidence, that time in the form of his conversations with four witnesses. The court denied both motions on June 10, 1997, stating that Senor had failed to submit any reliable evidence that these statements had been made, and that even if he had, the evidence would have altered the outcome of his trial.

**\*3** On August 6, 1997, Senor filed his first habeas corpus petition in this court (docket number 97-CV-4929). In that petition, he argued that: (1) his trial counsel was ineffective because he failed to challenge the legality of police conduct and failed to pursue other "colorable claims" based on known facts; (2) his appellate counsel provided ineffective assistance by refusing to brief on appeal the issue of lack of probable cause with respect to his arrest; (3) the police seized him without probable cause, questioning him based on a vague description fabricated by witnesses; (4) his acquiescence in

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2002 WL 31102612 (E.D.N.Y.)
(Cite as: 2002 WL 31102612 (E.D.N.Y.))

accompanying the arresting officers to the precinct did not constitute voluntarily consent and thus did not justify an otherwise unlawful police intrusion; and (5) the prosecution's failure to turn over a prior statement of a prospective witness and its violation during trial of one of the court's pre-trial rulings deprived him of his right to a fair trial.

By letter dated January 25, 1999, Senor requested that his petition be placed "on hold" pending the outcome of an application for post-conviction relief in state court based on "some newly discovered evidence [he] just found." Construing this letter to be a motion to dismiss, I granted it without prejudice and closed the case on February 17, 1999. On March 25, 1999, Senor filed his fourth § 440 motion, which was denied on June 18, 1999. In that motion, her raised issues of certain *Rosario* violations, the insufficiency of proof, and prosecutorial misconduct. Leave to appeal was denied on September 15, 1999. Senor filed the instant habeas corpus petition (docket number 00-CV-5673) on July 24, 2000. It includes the same arguments his first petition included.

DISCUSSION

A. *The Statute of Limitations*

There is a one-year statute of limitations in habeas corpus proceedings, which generally begins to run on "the date on which the judgment [becomes] final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(a).[FN2] In *Ross v. Artuz, 150 F.3d 97, 103 (2d Cir.1998)*, the Second Circuit held that a prisoner whose conviction became final prior to the enactment of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") must be afforded a one-year grace period from April 24, 1996 (the effective date of AEDPA) in which to file for federal habeas relief. *See id.* at 103. Pursuant to § 2244(d)(2), the time during which a properly-filed application for state post-conviction relief is pending shall not be counted in calculating the one-year grace period.

FN2. Section 2244(d)(1)(D) provides alternate start dates for the one-year limitation period, including "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." This provision is inapplicable in this case because Senor does not present any federal claims based on newly-discovered facts.

[1] Because Senor's judgment of conviction became final prior to April 24, 1996, his initial grace period to file for habeas relief was until April 24, 1997.[FN3] This period was tolled from April 24, 1996 through June 19, 1996 because, during that interval, Senor had motions pending in the state appellate courts in which he sought to reargue or appeal his previous adverse rulings. From June 19, 1996 through February 28, 1997, the date on which Senor filed his second § 440 motion, he did not have any litigation pending in the state courts. That period comprised 254 days.

FN3. Senior was convicted on January 10, 1994, and on November 6, 1995, the Appellate Division affirmed his conviction. Because he did not seek leave to appeal to the New York Court of Appeals, his judgment of conviction became final on December 6, 1995, the date upon which the 30-day period for seeking review in the Court of Appeals expired. *See N.Y.Crim. Proc. Law § 460.10*(5)(a).

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2002 WL 31102612 (E.D.N.Y.)
(Cite as: 2002 WL 31102612 (E.D.N.Y.))

**\*4** Senor's grace period was once again tolled from February 28, 1997 through June 10, 1997, the date on which his second and third § 440 motions were denied. Senor did not have any litigation pending in the state or federal courts between June 10, 1997 and August 6, 1997, which comprised fifty-seven days.

On August 6, 1997, Senor filed his first habeas corpus petition in this court (docket number 97-CV-4929), which I dismissed without prejudice on February 17, 1999. That time period comprised 560 days, during which the statute of limitations period was not tolled. *See Duncan v. Walker,* 533 U.S. 167, 181-82, 121 S.Ct. 2120, 150 L.Ed.2d 251 (2001) (the time period during which a habeas corpus petition is pending in federal court does not toll the one-year limitations period). Thus, prior to my dismissal of his Senor's first habeas corpus petition, Senor had allowed 871 days to run on his one-year grace period.

After February 17, 1999, Senor waited thirty-six days before filing his fourth § 440 motion, on March 25, 1999. That motion was denied on June 18, 1999, and leave to appeal was denied on September 15, 1999. The one-year grace period was tolled during that interval (provided it had not already expired).

Thereafter, Senor had no litigation pending between September 15, 1999 and the filing of his instant habeas petition. The earliest date on which Senor can be credited with filing the petition is July 24, 2000, the date on which he alleges that he placed a set of papers in the mailbox at the Green Haven Correctional Facility. *See Houston v. Lack,* 487 U.S. 266, 276, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988) (when a prisoner is proceeding *pro se,* he is deemed to have filed a document on the date he delivered it to prison authorities for forwarding to the court clerk). The period from September 15, 1999 to July 24, 2000 comprises 313 days.

Adding the period during which the one-year grace period was running against Senor yields a total of 1,184 days. Accordingly, Senor's petition must be dismissed as untimely.

*Zarvela v. Artuz,* 254 F.3d 374, 380 (2d Cir.2001), *cert. denied,* 534 U.S. 1015, 122 S.Ct. 506, 151 L.Ed.2d 415 (2001), provides no relief for Senor. In that case, the Second Circuit held that when a district court is presented with a mixed petition, *i.e.,* a petition that contains some exhausted claims and some unexhausted claims, it may (1) dismiss the entire petition without prejudice; or (2) dismiss the unexhausted claims and stay the rest. The court further held that when a dismissal "could jeopardize the timeliness of a collateral attack," a stay is the only course of action. *Id.* (citation omitted). The court specified that the stay should be conditioned on the petitioner pursuing state court remedies "within a brief interval, normally 30 days after the stay is entered and returning to federal court within a similarly brief interval, normally 30 days after a state court exhaustion is completed." *Id.* at 381.

The Second Circuit has not yet decided whether *Zarvela* should be applied retroactively. *See Smaldone v. Senkowski,* 273 F.3d 133, 139 (2d Cir.2001). In any event, I see no unfairness in denying habeas relief to this petitioner because he failed to make the "prompt trip to and from the state courts" contemplated by *Zarvela. See Zarvela,* 254 F.3d at 383. Rather, he delayed more than ten months before returning from the state courts. I note that other district courts within the circuit have dismissed petitions as untimely where petitioners have failed to act within the time constraints suggested in *Zarvela. See, e.g., Felton v. Mazzuca,* No. 98-CV-4567, 2002 WL 655207, at \*4 (S.D.N.Y. April 18, 2002) (petition time-barred under *Zarvela* ); *Edwards v. Greiner,* No. 00-CV-1331, 2002 WL 1467708, at \* 3 (E.D.N.Y. May 7, 2002)

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2002 WL 31102612 (E.D.N.Y.)
(Cite as: 2002 WL 31102612 (E.D.N.Y.))

(same). Finally, *Zarvela* is distinguished because, as described below, Senor does not present a "mixed petition" because he has no further recourse to state court. Accordingly, there would have been no need to dismiss the unexhausted claims and stay the balance of the petition to enable Senor to exhaust his state remedies. *See DeJesus v. Greiner,* No. 01-CV-2173, 2001 WL 1098001, at *2, n. 2 (S.D.N.Y. Sept.10, 2001).

**\*5** In conclusion, Senor's petition must be dismissed as time-barred. In any event, as discussed below, each of Senor's claims fail as either procedurally defaulted or without merit because the state court's decision was neither contrary to nor an unreasonable application of clearly established Federal law. *See Gilchrist v. O'Keefe,* 260 F.3d 87, 93 (2d Cir.2001) (citing *Williams v. Taylor,* 529 U.S. 362, 411, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000)).

### B. *The Standard of Review*

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") has narrowed the scope of federal habeas review of state convictions where the state court has adjudicated a petitioner's federal claim on the merits. *See* 28 U.S.C. § 2254(d). Under the AEDPA standard, which applies to habeas petitions filed after AEDPA's enactment in 1996, the reviewing court may grant habeas relief only if the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). The Supreme Court has interpreted the phrase "clearly established Federal law" to mean "the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." *Williams v. Taylor,* 529 U.S. 362, 412, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000); *see also Gilchrist v. O'Keefe,* 260 F.3d 87, 93 (2d Cir.2001).

A decision is "contrary to" clearly established federal law as determined by the Supreme Court if "the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams,* 529 U.S. at 413. A decision is an "unreasonable application" of clearly established Supreme Court law if a state court "identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of [a] prisoner's case." *Id.* Under the latter standard, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Gilchrist v. O'Keefe,* 260 F.3d 87, 93 (2d Cir.2001) (citing *Williams,* 529 U.S. at 411). Interpreting *Williams,* the Second Circuit has added that although "[s]ome increment of incorrectness beyond error is required ... the increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." *Id.* (citing *Francis S. v. Stone,* 221 F.3d 100, 111 (2d Cir.2000) (internal quotation marks omitted)).

This standard of review applies whenever the state court has adjudicated the federal claim on the merits, regardless of whether it has alluded to federal law in its decision. As the Second Circuit stated in *Sellan v. Kuhlman,* 261 F.3d 303 (2d Cir.2001):

**\*6** [f]or the purposes of AEDPA deference, a state court 'adjudicate[s] a state prisoner's federal claim on the merits when it (1) disposes of the claim 'on the merits,' and (2) reduces its disposition to judgment. When a

Not Reported in F.Supp.2d, 2002 WL 31102612 (E.D.N.Y.)
(Cite as: 2002 WL 31102612 (E.D.N.Y.))

state court does so, a federal habeas court must defer in the manner prescribed by 28 U.S.C. § 2254(d)(1) to the state court's decision on the federal claim-even if the state court does not explicitly refer to either the federal claim or to relevant federal case law.

*Id.* at 312.

C. *Senor's Claims*

1. *Ineffective Assistance of Trial Counsel*

Senor claims that his attorney provided him ineffective assistance at trial by failing to contest the legality of police conduct and failing to pursue other "colorable claims." He claims that his trial counsel should have challenged the circumstances surrounding his arrest. Specifically, he contends that the witnesses who initially gave the police a description of the shooter in this case either fabricated that description or embellished it to fit Senor. The police thus had no reason, independent of this improperly obtained description, to stop and detain Senor. Consequently, Senor maintains, his arrest violated the Fourth Amendment, and his attorney should have moved, pursuant to *Dunaway v. New York,* 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979), to suppress the identification testimony as the fruit of an unlawful arrest. Moreover, Senor contends that his attorney should have moved to set aside the verdict after he informed his attorney of the possibility that he knew one of the jurors.

Respondent argues that these claims are barred from review in this Court because the state either denied them based on a state procedural default, which constitutes an independent and adequate state ground. A procedurally defaulted claim is reviewable only if petitioner can

overcome the procedural bar by showing cause and prejudice, or that a fundamental miscarriage of justice would occur if I declined to review the claim. *See Coleman v. Thompson,* 501 U.S. 722, 749-50, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991); *Harris v. Reed,* 489 U.S. 255, 262, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989); *see also Lee v. Kemna,* 534 U.S. 362, 122 S.Ct. 877, 885, 888, 151 L.Ed.2d 820 (2002) (noting the existence of a "small category" of "exceptional cases in which exorbitant application of a generally sound rule renders the state ground inadequate to stop consideration of a federal question") (citation omitted). A petitioner may establish cause by showing "that the factual or legal basis for a claim was not reasonably available to counsel, or that some interference by officials made compliance impracticable." *McCleskey v. Zant,* 499 U.S. 467, 493-94, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991). To satisfy the prejudice requirement, the alleged error must have worked to the petitioner's actual and substantial disadvantage. *See Amadeo v. Zant,* 486 U.S. 214, 222, 108 S.Ct. 1771, 100 L.Ed.2d 249 (1988). If the petitioner cannot show cause and prejudice, the failure to raise the claim in an earlier petition may nonetheless be excused if he or she can show that a fundamental miscarriage of justice would result from a failure to entertain the claim. A fundamental miscarriage of justice requires a showing of "clear and convincing evidence that, but for a constitutional error, no reasonable juror would have found the petitioner [guilty]." *Sawyer v. Whitley,* 505 U.S. 333, 335, 112 S.Ct. 2514, 120 L.Ed.2d 269 (1992).

**\*7** Senor asserted an ineffective assistance of counsel claim in a § 440 motion filed September 13, 1995. The court, in denying the motion, stated that this claim lacked merit, but was also procedurally barred under N.Y.Crim. Proc. Law § 440.10(2)(c) because Senor could have raised it on direct appeal, but did not, and he provided no justification for having failed to do so. The subsequent order of the Appellate Division denying, without comment, leave to appeal the denial of petitioner's § 440

Not Reported in F.Supp.2d, 2002 WL 31102612 (E.D.N.Y.)
(Cite as: 2002 WL 31102612 (E.D.N.Y.))

motion does not alter that result. *See Ylst v. Nunnemaker,* 501 U.S. 797, 803, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991) ("[W]here ... the last reasoned opinion on the claim explicitly imposes a procedural default, we will presume that a later decision rejecting the claim did not silently disregard that bar and consider the merits.").

Because a state procedural default qualifies as an independent and adequate ground, this Court cannot consider Senor's ineffective assistance claim unless Senor shows cause for the default and prejudice resulting therefrom. Respondent maintains that Senor has not shown cause for failing to raise this claim on direct appeal, nor any resulting prejudice. I need not address this issue because the ineffectiveness claim has no merit.

The Supreme Court has established the following standard for ineffective assistance claims:

First, the defendant must show that counsel's performance was deficient. This requires that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction ... resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Thus, to make out this type of claim, the petitioner must demonstrate both (1) that his attorney's performance fell below an "objective standard of reasonableness," *id.* at 688, and (2) that "there is a

reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *id.* at 694. *See also Kieser v. New York,* 56 F.3d 16, 18 (2d Cir.1995). Actions or omissions by counsel that "might be considered sound trial strategy" do not constitute ineffective assistance. *Strickland,* 466 U.S. at 689; *see also Jackson v. Leonardo,* 162 F.3d 81, 85 (2d Cir.1998).

[2] Senor has failed to demonstrate in this case that his trial counsel's actions or inactions amounted to constitutionally inadequate performance. He claims that, during a pre-trial hearing pursuant to *United States v. Wade,* 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), his counsel elicited evidence that the police stopped Senor without probable cause, but then failed to pursue that issue by requesting a *Dunaway* hearing in which he could have challenged the lineup identifications as the fruit of an unlawful arrest. The record, however, indicates that the only witness who testified at the *Wade* hearing, Detective Burzotta, mentioned nothing to suggest that he and his partner had stopped and questioned Senor improperly. Rather, Detective Burzotta testified that they questioned Senor because he fit the description of their suspect and was hanging out where they were told a person fitting the suspect's description might be. Moreover, Senor points to no evidence in his attorney's possession at the conclusion of the *Wade* hearing that would have sustained his claim that the police had no probable cause to detain him. Senor's attorney, therefore, could not have alleged facts sufficient to establish that the police obtained the pretrial identifications under unlawful circumstances, as required under N.Y.Crim. Proc. Law §§ 710.20(1) and 710.60(1) to demonstrate that a defendant is entitled to a *Dunaway* hearing. *See People v. Covington,* 144 A.D.2d 238, 533 N.Y.S.2d 433, 434 (1st Dep't 1988), *appeal denied,* 73 N.Y.2d 890, 538 N.Y.S.2d 802, 535 N.E.2d 1342 (1989); *People v. Rolland,* 180 Misc.2d 729, 693 N.Y.S.2d 803 (N.Y.Sup.Ct. Apr.6, 1999). Defense counsel's decision not to request a *Dunaway* hearing thus

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2002 WL 31102612 (E.D.N.Y.)
(Cite as: 2002 WL 31102612 (E.D.N.Y.))

did not fall outside the bounds of professionally competent assistance, and, on this point, petitioner has not met the first prong of the *Strickland* test.

**\*8** Senor has also failed to meet *Strickland* 's second prong in failing to show that, had his attorney requested a *Dunaway* hearing, a "reasonable probability" exists that the court would even have granted that request, much less suppressed the lineup identifications. *See Strickland,* 466 U.S. at 694. Likewise, counsel's decision to refrain from making a motion to set aside the verdict did not render his performance constitutionally deficient.

[3] Senor further claims that, after the jury found him guilty, he alerted his attorney to the possibility that he had known one of the jurors in high school. Based on that representation, Senor contends, his attorney should have moved to set aside the verdict. In papers submitted to this Court and to the state courts, however, Senor has provided no support for his claim that he knew one of the jurors. Moreover, even if such a showing were made, I cannot conceive of how it affords a basis for relief for Senor, who withheld the information from his attorney and the court. Further, in light of the considerable evidence adduced at trial supporting the jury's guilty verdict, Senor has not demonstrated that, had his attorney moved to set aside the verdict, the court would have granted the motion. With respect to both issues on which he bases his ineffective assistance claim, therefore, Senor has failed to satisfy either prong of the *Strickland* test.

### 1. *Ineffective Assistance of Appellate Counsel*

Senor next argues that his appellate counsel provided him ineffective assistance by refusing to brief on appeal the issue of lack of probable cause with respect to his arrest. In particular, Senor contends that his attorney should have

included in his brief to the Appellate Division the claims Senor asserted in his *pro se* supplemental brief to the Appellate Division: that (1) the police seized him in violation of his Fourth Amendment rights when they surrounded him without probable cause or exigency and took him to the precinct; and (2) the police testimony regarding his arrest was unworthy of belief due to material inconsistencies. Senor presented this claim of ineffective assistance of appellate counsel to the Appellate Division in his application for a writ of error *coram nobis.* The Appellate Division denied it on the merits, stating that Senor had failed to establish that he was denied effective assistance of appellate counsel. *See People v. Senor,* 224 A.D.2d 646, 639 N.Y.S.2d 716 (2d Dep't 1996).

Respondent contends that Senor's claim lacks merit and fails to meet the standard for such claims established in *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Although the Supreme Court formulated the *Strickland* test in the context of examining a claim of ineffective assistance of trial counsel, the same test applies to claims regarding the performance of appellate counsel. *See Mayo v. Henderson,* 13 F.3d 528, 533 (2d Cir.1994); *Claudio v. Scully,* 982 F.2d 798, 803 (2d Cir.1992). Appellate counsel need not present every nonfrivolous argument that could be made. *See Mayo,* 13 F.3d at 533; *see also Evitts v. Lucey,* 469 U.S. 387, 394, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985) (emphasizing that appellate counsel "need not advance every argument, regardless of merit, urged by the appellant"). Moreover, reviewing courts should not employ hindsight to second-guess an appellate attorney's strategy choices. *See Mayo,* 13 F.3d at 533. A petitioner, however, may establish constitutionally inadequate performance if he shows that his appellate counsel omitted material and obvious issues while pursuing matters that were patently and significantly weaker. *Cf. Jackson v. Leonardo,* 162 F.3d 81, 85 (2d Cir.1998) ("relief may be warranted when a decision by counsel cannot be justified as a result of some kind of plausible trial strategy").

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2002 WL 31102612 (E.D.N.Y.)
(Cite as: 2002 WL 31102612 (E.D.N.Y.))

**\*9 [4]** Senor has failed to demonstrate in this case that his appellate counsel's actions amount to constitutionally inadequate performance. In his thirty-one-page brief to the Appellate Division, Senor's counsel focused on three issues that, he urged, warranted a reversal of Senor's conviction: (1) the prosecution's failure to turn over a prospective witness's prior statement; (2) the prosecution's violation, during the cross-examination of petitioner at trial, of the court's pre-trial ruling; and (3) the insufficiency of the evidence to sustain a murder conviction. The brief included a detailed review of the evidence presented at trial as well as citations to the record. Counsel chose not to pursue on appeal the issues related to the propriety of Senor's arrest, presumably because, in his professional judgment, he believed those issues were not preserved for appellate review and, in any event were meritless.

Counsel's decision not to advance the lack of probable cause claim on appeal did not bring his performance below an objective standard of reasonableness. *See Strickland, 466 U.S. at 687.* The claim was both unpreserved for appellate review and meritless, and thus the decision to forgo pursuing it on appeal did not fall below any standard of reasonableness.[FN4]

> **FN4.** Prior to Senor's first trial, his trial counsel moved to suppress his pretrial identification, claiming, among other grounds, that the police had arrested Senor without probable cause. The prosecution consented to a *Wade* hearing to examine the propriety of the lineup identifications, but did not address Senor's contention that the identifications were the result of an unlawful arrest. During the *Wade* hearing, the prosecution called Detective Burzotta as its sole witness, while the defense called no

witnesses. At the conclusion of the hearing, the court addressed only the issue of the lineups, stating that it found they had not been unduly suggestive, and denied the defense's motion to suppress the lineup identifications.

Senor never asked the court for a *Dunaway* hearing to determine whether the police had probable cause to arrest him. Nor did he ask the court to reconsider its decision in the *Wade* hearing or move to reopen the hearing based on any evidence adduced at the first trial. Furthermore, prior Senor's second trial, Senor did not move, pursuant to N.Y.Crim. Proc. Law §§ 710.20(1) and 710.60(1), to suppress any evidence or for a hearing on any suppression issue. Nor did he move, based upon evidence adduced at the second trial, for reconsideration of his initial motion or for a *Dunaway* hearing.

Under New York law, a defendant fails to preserve an issue for appellate review when he fails to object with specificity during the original proceeding, to seek curative instructions, or to request a mistrial. *See* N.Y.Crim. Proc. Law § 470.05(2). Because Senor failed to object to the admission of the lineup identifications on the specific basis that the police obtained them in violation of his Fourth Amendment rights, the questions of the propriety of Senor's detention and the admissibility of the resulting evidence were not preserved for appellate review. *See People v. Miguel, 53 N.Y.2d 920, 924, 440 N.Y.S.2d 923, 423 N.E.2d 400 (1981).* Moreover, as discussed earlier, Senor's trial counsel had no basis upon which to request a *Dunaway* hearing to raise the probable cause issue.

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2002 WL 31102612 (E.D.N.Y.)
(Cite as: 2002 WL 31102612 (E.D.N.Y.))

In any event, Senor cannot show that he was prejudiced by his appellate counsel's decision not to advance the probable cause claim because Senor asserted that claim in his *pro se* supplemental brief submitted to the Appellate Division. The Appellate Division considered the claims raised in Senor's *pro se* brief and determined that they were either unpreserved for appellate review or without merit. Consequently, had appellate counsel included the probable cause claim in his brief to the Appellate Division, the result would have been the same.

### 2. *Lack of Probable Cause to Arrest*

[5] Senor claims that the police seized him without probable cause, questioning him based on a vague description concocted by two witnesses. As discussed earlier, Senor maintains that the witnesses who initially gave the police a description of the shooter in this case either fabricated that description or embellished it to fit Senor. Because the police had no other reason to stop and detain Senor, he maintains that his resulting arrest violated the Fourth Amendment, and the lineup identifications were the fruit of that unlawful arrest.

This claim is barred from federal review because Senor failed to exhaust it in the state courts. The exhaustion requirement, which arises out of considerations of comity between the federal and state judicial systems, ensures that state courts have an opportunity to correct any violations of the federal constitutional rights of prisoners already within their jurisdiction. *See O'Sullivan v. Boerckel,* 526 U.S. 838, 119 S.Ct. 1728, 1732, 144 L.Ed.2d 1 (1999); *Duncan v. Henry,* 513 U.S. 364, 365-66, 115 S.Ct. 887, 130 L.Ed.2d 865 (1995) (per curiam ); *Picard v. Connor,* 404 U.S. 270, 275, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971); *Daye v. Attorney General,* 696 F.2d 186, 191 (2d Cir.1982).* Exhaustion requires a petitioner to have presented to each level of the state courts the same federal constitutional claims, legally and factually, that are raised in his petition to the federal court, so that the state courts will have been alerted to them and have had the initial opportunity to assess them. *See O'Sullivan,* 119 S.Ct. at 1732-33; *Duncan,* 513 U.S. at 365-66; *Picard,* 404 U.S. at 275-76; *Daye,* 696 F.2d at 191.

*10 In this case, Senor presented this Fourth Amendment claim on direct appeal in his *pro se* supplemental brief to the Appellate Division. In its November 6, 1995, decision affirming Senor's judgment of conviction, the Appellate Division rejected this claim, among others, without discussion, as either not preserved or without merit. *See People v. Senor,* 221 A.D.2d 384, 635 N.Y.S.2d 480 (2d Dep't 1995).[FN5] Senor then failed to apply for leave to appeal to the New York Court of Appeals from the Appellate Division's decision affirming his conviction.[FN6] Because he did not present this claim to the New York Court of Appeals, the claim is unexhausted. *See O'Sullivan,* 119 S.Ct. at 1732-33; *Grey v. Hoke,* 933 F.2d 117, 119 (2d Cir.1991) (stating that, in order to exhaust state remedies, "a petitioner must present his federal constitutional claim to the highest court of the state").[FN7]

FN5. In *Fama v. Commissioner of Corr. Servs.,* 235 F.3d 804, 810 (2d Cir.2000), the Second Circuit held that when a state court uses language such as "[t]he defendant's remaining contentions are either unpreserved for appellate review or without merit," the validity of the claim is preserved and is subject to federal review.

FN6. As mentioned earlier, Senor states that he sought leave to appeal the Appellate Division's November 6, 1995, decision, but cites as support a certificate from the New York Court of

Not Reported in F.Supp.2d, 2002 WL 31102612 (E.D.N.Y.)
(Cite as: 2002 WL 31102612 (E.D.N.Y.))

Appeals, dated June 19, 1996, that denies him leave to appeal a subsequent May 8, 1996, decision by the Appellate Division. Respondent maintains that Senor did not seek leave to appeal the Appellate Division's November 6, 1995, decision affirming his conviction, and nothing in the record indicates that he did.

FN7. Although Senor also raised this same claim in a § 440 motion and then appealed the denial of that motion to the Appellate Division, he still failed to exhaust it because the New York Court of Appeals never had the opportunity to review the claim.

Senor can no longer exhaust this claim because, under N.Y.Crim. Proc. Law § 460.10(5), he had thirty days after November 6, 1995, the date the Appellate Division affirmed his conviction, to make an application for leave to appeal to the Court of Appeals. Because this time limit has expired, this claim is procedurally barred from review by the state courts. Where it is clear that a state court would determine that an unexhausted claim is procedurally barred from state review, such a claim is deemed exhausted. *See Grey v. Hoke,* 933 F.2d 117, 120 (2d Cir.1991) (citing *Harris v. Reed,* 489 U.S. 255, 263 n. 9, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989) ("[A] federal habeas court need not require that a federal claim be presented to a state court if it is clear that the state would hold the claim procedurally barred.")).

Senor has not attempted to show cause and resulting prejudice for his failure to appeal the Appellate Division's decision affirming his conviction. In addition, my refusal to consider the claim would not result in a miscarriage of justice.

In any event, the claim is without merit. In *Stone v. Powell,* 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976), the Supreme Court curtailed federal habeas review of Fourth Amendment claims where the state has provided "an opportunity for full and fair litigation" of the Fourth Amendment challenge. *Id.* at 482. Following *Powell,* the Second Circuit has held that courts should review Fourth Amendment claims in habeas petitions only if: (1) the state has provided no corrective procedures at all to redress the alleged Fourth Amendment violations; or (2) the state has provided a corrective mechanism, but the defendant was precluded from using that mechanism because of an unconscionable breakdown in the underlying process. *See Gates v. Henderson,* 568 F.2d 830, 840 (2d Cir.1977) (*en banc* ); *see also Capellan v. Riley,* 975 F.2d 67, 70 (2d Cir.1992).

Senor cannot claim that the state lacked sufficient procedures for redress of his Fourth Amendment claim because the courts in this circuit have expressly approved New York's procedure for litigating such claims, specified in N.Y.Crim. Proc. Law §§ 710 *et seq.,* as facially adequate. *See, e.g., Gates,* 568 F.2d at 837 & n. 4; *Taylor v. Kuhlmann,* 36 F.Supp.2d 534, 549 (E.D.N.Y.1999); *Holmes v. Scully,* 706 F.Supp. 195, 201 (E.D.N.Y.1989).

**\*11** Moreover, Senor has not alleged that an unconscionable breakdown in the process occurred, nor could he. To allege such a breakdown, Senor must prove that "no state court ... conducted a 'reasoned method of inquiry into relevant questions of fact and law' or any inquiry at all into the Fourth Amendment claim." *Shaw v. Scully,* 654 F.Supp. 859, 863-64 (S.D.N.Y.1987) (quoting *Cruz v. Alexander,* 477 F.Supp. 516, 523 (S.D.N.Y.1979)); *see also Taylor,* 36 F.Supp.2d at 549. At the *Wade* hearing prior to his first trial, Senor raised the issue of lack of probable cause to arrest, but did not adduce sufficient facts to press that issue in a *Dunaway* hearing. A state court thus conducted an inquiry into the

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2002 WL 31102612 (E.D.N.Y.)
(Cite as: 2002 WL 31102612 (E.D.N.Y.))

questions relevant to the issue raised, and no unconscionable breakdown in the process occurred. As a result, I cannot consider Senor's illegal arrest argument as an independent basis for habeas review.

### 3. *The Claim that Senor did not Voluntarily Accompany the Police to the Precinct*

[6] Senor claims that his acquiescence in accompanying the arresting officers to the precinct did not constitute voluntarily consent and thus did not justify an otherwise unlawful police intrusion. Respondent argues that this claim is barred from habeas review because the state court denied it based on a state procedural default, which constitutes an independent and adequate state ground.

I agree. In denying petitioner's first § 440 motion, the court held that Senor's claim that he did not voluntarily consent to accompany the police to the precinct station was procedurally barred under N.Y.Crim. Proc. Law § 440.10(2)(c), because petitioner based it on matters that appeared in the record, yet did not raise the claim on direct appeal and failed to offer a "reasonable excuse" for not doing so. The order of the Appellate Division denying, without comment, leave to appeal the denial of petitioner's § 440 motion does not alter this result. *See Ylst v. Nunnemaker,* 501 U.S. 797, 803, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991) ("[W]here ... the last reasoned opinion on the claim explicitly imposes a procedural default, we will presume that a later decision rejecting the claim did not silently disregard that bar and consider the merits.").

Senor does not show cause and prejudice for the default. Furthermore, considering the paucity of evidence supporting his claim that his arrest violated the Fourth Amendment, a miscarriage of justice will not result from my failure to review the claim.

### 4. The Claim That the Prosecutor Failed to Turn Over a Prior Witness Statement and *Violated a Pre-Trial Ruling*

During Senor's second trial, defense witness Yashika Jones testified on direct examination that, on the night Senor was arrested, she went to Putnam Avenue, where Senor usually hung out, to look for him. *See* Tr. at 259.[FN8] On cross-examination, the prosecutor asked Jones why she thought Senor would be at Putnam Avenue. Jones replied, "Because he sold drugs up there on Putnam Avenue." *Id.* at 264. Later on in the trial, when Senor testified, defense counsel asked him if he had ever been convicted of a felony. Senor answered yes. Defense counsel then asked if the conviction related to drugs. Senor replied, "Yes, it was possession." *Id.* at 295. On cross-examination, the prosecutor asked Senor, "Now, you were arrested for selling drugs for the case that you took five years probation for?" *Id.* at 305. Senor answered, "Yes." *Id.*

> FN8. "Tr." refers to the transcript of Senor's second trial.

**\*12** Senor claims that the prosecutor violated New York law as articulated in *People v. Rosario,* 9 N.Y.2d 286, 213 N.Y.S.2d 448, 173 N.E.2d 881 (1961), by failing to turn over to the defense a statement Jones gave to the prosecutor prior to trial, in which she allegedly mentioned that Senor had sold drugs on Putnam Avenue. He further asserts that, by eliciting from Jones that Senor sold drugs and by asking Senor on cross-examination about his drug activities, the prosecutor violated the court's pre-trial ruling in a hearing pursuant to *People v. Sandoval,* 34 N.Y.2d 371, 357 N.Y.S.2d 849, 314 N.E.2d 413 (1974). During that *Sandoval* hearing, the trial court had ruled that if Senor testified on his own behalf at trial, the prosecution could inquire about his prior felony conviction, but could

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2002 WL 31102612 (E.D.N.Y.)
(Cite as: 2002 WL 31102612 (E.D.N.Y.))

not elicit the underlying facts of that conviction, specifically that it was for possession of a controlled substance. Senor maintains that the prosecutor intentionally withheld from the defense Jones' statement regarding Senor selling drugs, so that, at trial, the prosecutor could circumvent the court's *Sandoval* ruling and elicit from Jones facts related to Senor prior drug possession conviction. Senor contends that these actions deprived him of a fair trial.

Respondent contends that this Court cannot review this claim because it relates only to state, not federal, questions. That is not entirely correct. The Supreme Court has emphasized on several occasions that federal habeas relief does not lie for errors of state law. *See, e.g., Estelle v. McGuire,* 502 U.S. 62, 67, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991); *Lewis v. Jeffers,* 497 U.S. 764, 780, 110 S.Ct. 3092, 111 L.Ed.2d 606 (1990); *Pulley v. Harris,* 465 U.S. 37, 41, 104 S.Ct. 871, 79 L.Ed.2d 29 (1984). In conducting habeas review, a federal court is limited to determining whether a conviction violated the Constitution, laws, or treaties of the United States. *See Estelle,* 502 U.S. at 67; 28 U.S.C. § 2241. A federal court, therefore, cannot review a habeas claim based on an alleged *Rosario* violation because the *Rosario* rule is purely a matter of state law. *See Green v. Artuz,* 990 F.Supp. 267, 274 (S.D.N.Y.1998); *Morrison v. McClellan,* 903 F.Supp. 428, 429 (E.D.N.Y.1995); *United States ex rel. Butler v. Schubin,* 376 F.Supp. 1241, 1247 (S.D.N.Y.1974), *aff'd,* 508 F.2d 837 (2d Cir.1975).

[7] A claim based on an alleged *Sandoval* violation, on the other hand, deals with an evidentiary issue and may present an issue for habeas relief, but only if the petitioner establishes that the trial court committed error that constitutes a deprivation of a constitutionally recognized right. *See Rosario v. Kuhlman,* 839 F.2d 918, 924-25 (2d Cir.1988); *Benitez v. Senkowski,* No. 97-Civ-7819, 1998 WL 668079, at *7 (S.D.N.Y. Sept.17, 1998); *Rojas v.*

*Senkowski,* No. 95-CV-1866, 1996 WL 449321, at *3 (E.D.N.Y. July 29, 1996) ("The decision to admit prior convictions ... [is] not redressable in a federal habeas corpus proceeding absent a showing that the particular errors were of constitutional magnitude." (quotations omitted)).

**\*13** In order for an evidentiary error to be cognizable under habeas corpus review, the error must cause "actual prejudice" to the petitioner by having a "substantial and injurious effect or influence in determining the jury's verdict." *See Brecht v. Abrahamson,* 507 U.S. 619, 637-38, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993) (internal quotation marks omitted); *see also Loliscio v. Goord,* 263 F.3d 178, 185 (2d Cir.2001) (posing but not answering question whether, in light of AEDPA, a federal habeas court should continue to apply the *Brecht* standard or determine instead whether the state court's decision was contrary to, or involved an unreasonable application of, the harmless error standard established in *Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967)).

Even assuming the trial court erroneously permitted the prosecutor to question Senor about his prior drug conviction, Senor has not demonstrated that the ruling influenced the jury's verdict in any way. The prosecution presented abundant evidence at trial pointing to petitioner's guilt. Furthermore, Senor's claim is meritless. On direct examination of Jones, the defense opened the door to questions regarding why Jones went to Putnam Avenue to look for Senor. In addition, when questioning Senor, the defense counsel, not the prosecutor, elicited the facts underlying Senor's prior felony conviction. The prosecutor, therefore, appropriately developed these facts on cross-examination of Senor.

[8] In any event, the claim is procedurally defaulted. Senor

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2002 WL 31102612 (E.D.N.Y.)
(Cite as: 2002 WL 31102612 (E.D.N.Y.))

asserted this claim on direct appeal to the Appellate Division, but failed to include it in his leave application. Moreover, he failed to include it in any of his § 440 motions. Thus, the claim is unexhausted. *See Grey v. Hoke,* 933 F.2d 117, 119 (2d Cir.1991). Senor can no longer exhaust this claim because, under N.Y. Crim Proc. Law § 460.10(5), he had thirty days after November 6, 1995, the date the Appellate Division affirmed his conviction, to make an application for leave to appeal to the Court of Appeals. Thus, he can no longer seek leave to appeal this claim. In addition, he cannot raise this claim in another § 440 motion because it relates to facts that appear on the record and, consequently, he should have asserted it on direct appeal and cannot do so now through a collateral challenge. *See* N.Y.Crim. Proc. Law § 440.10. Where it is clear that a state court would determine that an unexhausted claim is procedurally barred from state review, such a claim is deemed exhausted. *See O'Sullivan,* 119 S.Ct. at 1732-33; *Grey,* 933 F.2d at 120. Therefore, this claim is procedurally barred from federal review because Senor fails to show cause and prejudice or that a fundamental miscarriage of justice will result.

CONCLUSION

For the reasons stated above, Senor's petition for a writ of habeas corpus is denied in its entirety. I hereby decline to issue a certificate of appealability, since Senor has not presented a "substantial showing of the denial of a constitutional right." *Reyes v. Keane,* 90 F.3d 676, 680 (2d Cir.1996).

**\*14** So Ordered.

E.D.N.Y.,2002.
Senor v. Greiner
Not Reported in F.Supp.2d, 2002 WL 31102612

(E.D.N.Y.)

END OF DOCUMENT

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 1977435 (N.D.N.Y.)

(Cite as: 2006 WL 1977435 (N.D.N.Y.))



Only the Westlaw citation is currently available.
United States District Court,

N.D. New York.
Julia LONG, Petitioner,
v.
Elaine A. LORD, Respondent.
No. 03-CV-0461 NPM.

March 21, 2006.

Julia Long, Bedford Hills Correctional Facility, Bedford Hills, NY, Petitioner, pro se.

Hon. Eliot Spitzer, Office of Attorney General, New York State Attorney General, The Capitol, Albany, NY, for the Respondent.

Bridget E. Holohan, Ass't Attorney General, of counsel.

*Memorandum-Decision and Order issued in*

SMITH, J.
*MEMORANDUM-DECISION and ORDER*
MCCURN, Senior J.

**\*1** Petitioner Julia Long, a New York State prison inmate as a result of 1997 convictions for the crimes of first degree assault and criminal possession of a weapon, has commenced this proceeding seeking federal habeas relief pursuant to 28 U.S.C. § 2254. In her petition, Long asserts seven separate grounds in support of her request for federal habeas intervention. Respondent has filed a response in opposition to Long's petition, arguing therein that some of the claims asserted by Long are procedurally barred, and additionally that none of the grounds advanced in her petition have merit.

This Court finds that Long is procedurally barred from asserting several of the claims she has raised in her petition. Since petitioner has not established cause for her procedural default concerning those grounds or that she is actually innocent of any of the crimes of which he stands convicted, this Court denies those claims as procedurally

barred. Furthermore, after considering the remaining grounds raised by Long in her petition in conjunction with applicable case law, this Court finds that the additional claims asserted by Long in her habeas petition lack merit. Accordingly, this Court denies and dismisses Long's petition.

## I. *BACKGROUND*

### A. *State Court Proceedings*

According to the state court records below, in the afternoon of May 1, 1995, Long attended a meeting at the TC Club in Albany, New York in order to discuss the possibility of leasing that property from its owner. *See* Transcript of Trial of Julia Long (1/3/97) ("Trial Tr.") at 366. Ivetta Parson, an individual with whom Long had had an altercation earlier that year, was also at the club around the time of Long's meeting. *See* Trial Tr. at 120-23. For reasons not apparent from the record, Long approached Parson at that time and sprayed her face with mace. Trial Tr. at 123-24. Parson ran out of the club and went to the home of her friend, Regina Monell, where Parson washed her face. Trial Tr. at 125. The two then decided to drive to the TC Club with some friends and confront Long about the incident that had just transpired. Trial Tr. at 126-27. When the group arrived at the club, Parson observed Long holding a handgun. Trial Tr. at 132. Parson exited her vehicle, and as she was walking around her car she discovered that she was bleeding.[FN1] Trial Tr. at 132-33. Around this same time, Monell observed Long firing her weapon at Parson, Trial Tr. at 163-64, and soon thereafter Monell noticed that she had also been shot. Trial Tr. at 164.

> FN1. Parson did not hear Long's gun discharge. Trial Tr. at 133.

**\*2** The trial transcript also reflects that on May 1, 1995, Charles Traynham was a long time acquaintance of Robert Temple. Trial Tr. at 292. At approximately 5:00 p.m. on that date, Traynham and Temple were across the street from the TC Club. Trial Tr. at 293. Soon after Traynham went into a nearby store, he heard gunshots. Trial Tr. at 293-94. Traynham left the store and heard

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 1977435 (N.D.N.Y.)

(Cite as: 2006 WL 1977435 (N.D.N.Y.))

Temple calling out that he had been "hit." Trial Tr. at 294. When Traynham noticed that Temple was bleeding, Traynham drove him to a nearby hospital to be treated for his injuries, Trial Tr. at 296, which included a life-threatening gunshot wound to an artery in his right arm. Trial Tr. at 186-89.[FN2]

> FN2. The prosecution was unable to locate Temple prior to the date of Long's trial. Trial Tr. at 289.

Kenneth Kennedy, a Detective with the Albany Police Department, was assigned to perform a criminal investigation relating to the above-referenced shooting. After speaking with several individuals, Detective Kennedy began looking for Long so that he could question her about her activities on May 1, 1995. Trial Tr. at 325. When Long learned that the police were attempting to question her about the shooting, she contacted an attorney and thereafter surrendered to law enforcement agents. Trial Tr. at 438-39.

On October 13, 1995, an Albany County grand jury returned an indictment against Long. *See* Indictment No. 950631 ("Indictment"). In that accusatory instrument, Long was charged with one count of attempted murder, two counts of first degree assault, and two counts of second degree criminal possession of a weapon. *See* Indictment, Counts One through Five. Beginning on January 3, 1997, Long was tried before a jury on the foregoing charges in Albany County Court with County Court Judge Thomas A. Breslin presiding. After the parties presented their closing arguments and the court instructed the jury, the jury began its deliberations. Following several requests by the jury for the reading back of testimony and clarifications regarding the court's instructions, Trial Tr. at 634-52, the jury declared that it had reached a verdict in the case. In its verdict, the jury: i) acquitted Long of the attempted murder charge; ii) convicted her of both counts charging Long with first degree assault; iii) convicted her of the count charging Long with second degree criminal possession of a weapon (which related to victim Monell); and iv) acquitted her of the final count charging Long with second degree criminal possession of a weapon (which related to victim Temple). Trial Tr. at 652-55.

Prior to sentencing, Long's counsel filed a motion to set aside the jury's guilty verdict pursuant to New York Criminal Procedure Law ("CPL"), Section 330.30 ("CPL § 330 Motion"). *See* Record on Appeal ("Record") at 133. In that application, defense counsel alleged that the convictions must be reversed because Parson was allowed to testify that she was shot by Long despite the fact that Long had never been charged with assaulting Parson. Record at 134. Counsel also claimed that there was insufficient evidence adduced at trial to establish that Temple was shot by Long. Record at 135. After hearing argument on that application, on February 21, 1997, the county court denied Long's CPL § 330 Motion in its entirety. Record at 119-24. That court then sentenced Long to consecutive, indeterminate terms of five to fifteen years imprisonment on each of the first degree assault convictions, and a lesser, concurrent term of imprisonment on the criminal possession of a weapon conviction. *See* Record at 130-31.

**\*3** Long appealed her convictions and sentences to the New York State Supreme Court, Appellate Division, Third Department. However, on November 25, 2000, prior to perfecting that appeal, Long filed a motion to vacate her sentence pursuant to CPL § 440.20. Record at 138. In that application, Long alleged that the consecutive sentences that had been imposed on her by the county court were illegal and contrary to her rights under both the federal and New York state constitutions. *See* Record at 139-44 ("CPL 440.20 Motion"). In support of that application, Long provided an affidavit of Temple-of whom Long had been convicted of assaulting-in which Temple declared that he could not identify the individual who shot him on May 1, 1995. Record at 145. Long's application was opposed by the District Attorney, Record at 146-47, and by Decision and Order dated January 25, 2001, Judge Breslin denied Long's CPL 440.20 Motion in its entirety. Record at 149-51 ("January, 2001 Order"). Long sought leave to appeal that decision to the Appellate Division, *see* Record at 152, and in its order dated April 20, 2001, the Third Department granted Long leave to appeal the January, 2001 Order to the Appellate Division along with her direct appeal of her conviction. Record at 155.

With the assistance of counsel, Long argued in her

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 1977435 (N.D.N.Y.)

(Cite as: 2006 WL 1977435 (N.D.N.Y.))

direct appeal that: i) she was unduly prejudiced by Parson's testimony to the effect that she was shot by Long; ii) there was insufficient evidence adduced at trial to convict Long of the first degree assault of Temple; iii) she was denied her right to a fair trial due to the manner in which the trial court mischaracterized the allegations of one of the charges in the Indictment; iv) the jury's verdict was repugnant; and v) the sentences were unduly harsh and excessive. *See* Appellant's Brief on Appeal ("App.Br.") at 1-25. That appeal was opposed by the District Attorney in his brief dated December 14, 2001, and on February 28, 2002, the Third Department unanimously affirmed Long's convictions and sentences. *People v. Long,* 291 A.D.2d 720, 738 N.Y.S.2d 721 (3d Dept.2002). New York's Court of Appeals denied Long leave to appeal in its order dated June 17, 2002. *See People v. Long,* 98 N.Y.2d 677, 746 N.Y.S.2d 467, 774 N.E.2d 232 (2002).

B. *Proceedings in this Court*

Long commenced this proceeding, *pro se,* on April 14, 2003. *See* Petition (Dkt. No. 1). In that pleading, petitioner argues that: i) admission into evidence of an uncharged crime purportedly committed by Long deprived her of her right to a fair trial; ii) the trial court wrongfully denied Long's application to dismiss the third count in the Indictment; iii) the jury's verdict was repugnant; iv) the trial court misstated the factual allegations contained in the third count in the Indictment in its instructions to the jury; v) the sentence imposed was both harsh and excessive; vi) the imposition of consecutive sentences was both illegal and violative of Long's right against Double Jeopardy; and vii) the Appellate Division wrongfully refused to hear Long's appeal of the denial of her CPL 440.20 Motion. *See* Petition at ¶ 13. Long has also filed a memorandum of law in support of her petition. *See* Dkt. No. 2 ("Supporting Mem.").

**\*4** By Order dated April 24, 2003, the respondent was ordered to file a response to Long's petition. On June 20, 2003, the Office of the Attorney General for the State of New York, acting on respondent's behalf, filed an answer together with a memorandum in opposition to Long's petition. Dkt. Nos. 8-9. In his opposing memorandum, respondent argues that Long is procedurally barred from asserting certain of the claims raised in her petition, and

that none of Long's claims have merit. *See* Dkt. No. 9 ("Opp.Mem.").

II. *DISCUSSION*

A. *Procedurally Defaulted Claims*

This Court initially considers respondent's claim that Long has procedurally defaulted on her claims: i) which allege that she was denied her right to a fair because Parson was allowed to testify about an uncharged crime purportedly committed by Long; ii) that assert that the county court mischaracterized a charge contained in the Indictment; and iii) which contest both the legality and constitutionality of her sentences. *See* Opp. Mem. at 3-6.
1. *Admission of Evidence of an Uncharged Crime*

Petitioner's initial ground for relief is based upon Parson's trial testimony in which she suggested that she was shot by Long. *See* Petition, Ground A.

In her direct appeal, Long noted that the Indictment never charged her with committing any crime against Parson. *See* App. Br. at 3; *see also* Indictment. Prior to trial, defense counsel obtained a ruling from the county court that precluded Parson from testifying about the fact that she had been shot on May 1, 1995. *See* App. Br. at 5; *see also* Appellant's Appendix at A1. At trial, however, Parson testified that she was shot on that day in a manner which suggested that Long was the individual who had shot her. *See* Trial Tr. at 163-64. In addressing Long's appellate claim that the admission of that testimony constituted reversible error, the Third Department ruled that Long had "failed to object to Parson's testimony and, therefore, did not preserve this issue for appellate review." *Long,* 291 A.D.2d at 721, 738 N.Y.S.2d 721 (citing CPL § 470.05[2] ) (other citation omitted).

A state court's determination that a claim was not preserved for appellate review is a finding of procedural default. *See Rivera v. Moscicki,* No. 03 CIV. 5810, 2005 WL 2347840, at *3 (S.D.N.Y. Sept. 22, 2005); *Wilson v. Supt., Attica Corr. Facility,* No. 9:00-CV-767, 2003 WL 22765351, at *3 (N.D.N.Y. Nov.24, 2003) (Sharpe, M.J.) (citations omitted), *adopted, Wilson v. Supt., Attica Corr. Facility,* slip op. at 2 (N.D.N.Y. Feb. 3, 2004) (Mordue, J.); *Betancourt v. Bennett,* No. 02-CV-3204, 2003 WL 23198756, at *12 (E.D.N.Y. Nov.7, 2003). Therefore,

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 1977435 (N.D.N.Y.)

(Cite as: 2006 WL 1977435 (N.D.N.Y.))

Long has procedurally defaulted on her first ground for relief.

### 2. *Misstatement Regarding Count Three of the Indictment*

In her fourth ground seeking federal habeas intervention, Long argues that in its charge to the jury, the trial court mischaracterized the allegations contained in Count Three of the Indictment. Petition, Ground D. Specifically, she notes that such count alleged that Long shot Temple in his *chest* and right arm. *See* Indictment, Count Three (emphasis added). In its charge to the jury, however, the trial court declared that this count alleged that Long had shot Temple in the right side of his *head* and in his right arm. *See* Trial Tr. at 617 (emphasis added). Long claims in this action, as she did in her direct appeal, that as a result of the foregoing she was deprived of her right to a fair trial. *See* Supporting Mem. at 16-18; App. Br. at 16-18.

**\*5** In addressing this appellate claim, the Appellate Division determined that Long had "failed to object to the court's charge and, therefore, that error has not been preserved for review (*see,* CPL 470.05[2] )." Since the Third Department explicitly determined that Long had failed to preserve this issue for appellate review, Long has procedurally defaulted on the fourth claim asserted in her petition.[FN3] Rivera, 2005 WL 2347840, at \*3; Wilson, 2003 WL 22765351, at \*3; Betancourt, 2003 WL 23198756, at \*12.

> FN3. The Appellate Division's decision might be liberally read as one that alternatively addressed the merits of this claim. *See* Long, 291 A.D.2d at 723, 738 N.Y.S.2d 721 (after noting Long's procedural default on the claim relating to the county court's misreading of Count Three of the Indictment, the Third Department opined that "were we to address the issue, we would find it without merit since all other trial references to Temple's wound correctly characterized its nature").
>
> Even assuming, *arguendo,* that the above cited language may properly be characterized as an (alternative) decision addressing the merits of this claim, the undersigned notes that "federal

habeas review is foreclosed when a state court has expressly relied on a procedural default as an independent and adequate state ground, even where the state court has also ruled in the alternative on the merits of the federal claim." Velasquez v. Leonardo, 898 F.2d 7, 9 (2d Cir.1990); Glenn v. Bartlett, 98 F.3d 721, 724-25 (2d Cir.1996) (citing *Velasquez* ); *see also* Olivo v. Thorton, No. 05 CIV.3237, 2005 WL 3292542, at \*8 (S.D.N.Y. Dec. 6, 2005); Broome v. Coughlin, 871 F.Supp. 132, 134 (N.D.N.Y.1994) (Kaplan, J., sitting by designation). Therefore, this Court deems Long to have procedurally defaulted on this ground.

### 3. *Claims Raised in CPL 440.20 Motion*

Long argued in her CPL 440.20 Motion, and similarly asserts in her sixth ground for relief herein, that the county court's imposition of consecutive sentences on Long was both illegal and contrary to her constitutional right to be free from Double Jeopardy. *See* Record at 139-44; Petition, Ground F.

As noted above, the Appellate Division granted Long permission to appeal the county court's January, 2001 Order denying Long's CPL 440 .20 Motion. *See* Record at 155. Long's appellate counsel did not, however, assert on appeal any claims that Long had raised in her CPL 440.20 Motion. *See* App. Br. at 4-25. In addressing this fact in the context of Long's appeal, the Third Department noted:

> Although [Long] appeals from both the judgment of conviction and the order denying Long's CPL 440.20 motion, her failure to address any issues pertaining to the denial of her CPL 440.20 motion constitutes an abandonment of the appeal from that order. Accordingly, we address only the arguments raised on the appeal from the judgment of conviction.

> Long, 291 A.D.2d at 721, 738 N.Y.S.2d 721.

Where a petitioner abandons a claim at the appellate level, federal courts are to view such a claim as procedurally defaulted. Delucia v. West, No. 04 CIV. 3605, 2005 WL 1981708, at \*4 (S.D.N .Y. Aug. 17, 2005)

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 1977435 (N.D.N.Y.)

(Cite as: 2006 WL 1977435 (N.D.N.Y.))

("claims [that] may be considered abandoned ... result[ ] in a procedural default"); *Stephens v. Lacy,* 914 F.Supp. 44, 45 (E.D.N.Y.1996) (claims abandoned at the appellate level are procedurally defaulted). This Court accordingly finds that Long has procedurally defaulted on her sixth ground seeking federal habeas intervention.

B. *Consequences of Procedural Default*

A federal district court is precluded from reviewing a habeas claim if the state courts' rejection of that same claim rested on a state procedural bar. *Harris v. Reed,* 489 U.S. 255, 262, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989); *Jones v. Stinson,* 229 F.3d 112, 118 (2d Cir.2000); *Marengo v. Conway,* 342 F.Supp.2d 222, 228 (S.D.N.Y.2004) (citations omitted). Thus, where the state court decision clearly and expressly indicates that its determination rests on a state procedural bar, a federal court may not review such claim when it is subsequently asserted in a federal habeas petition unless the petitioner demonstrates both good cause for and actual prejudice resulting from the noncompliance with the state's procedural rule. *Fama v. Commissioner of Correctional Services,* 235 F.3d 804, 809 (2d Cir.2000); *Livingston v. Herbert,* No. 00-CV-1698, 2002 WL 59383, at *2 (N.D.N.Y. Jan. 3, 2002) (Homer, M.J.), *adopted,* No. 00-CV-1698, docket no. 20 (N.D.N.Y. Jan. 24, 2002) (Kahn, J.), *appeal dismissed,* No. 02-2083, slip op. at 1 (2d Cir. Aug. 28, 2002) (unpublished). Additionally, review of procedurally defaulted claims is available where the petitioner demonstrates that a fundamental miscarriage of justice would occur absent federal court review.[FN4] *Dixon,* 293 F.3d at 80; *Morales v. Greiner,* No. CV-98-6284, 2005 WL 1009545, at *8 (E.D.N.Y. May 2, 2005).

> FN4. A fundamental miscarriage of justice exists "where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Dixon v. Miller,* 293 F.3d 74, 81 (2d Cir.2002).

*6 For this Court to excuse Long's procedural default under the "cause and prejudice" exception which permits federal review of procedurally barred claims, she must first establish "cause" for her default. *E.g.,* *St. Helen v. Senkowski,* 374 F.3d 181, 184 (2d Cir.2004) (citation

omitted), *cert. denied,* 543 U.S. 1058, 125 S.Ct. 871, 160 L.Ed.2d 785 (2005); *Stepney v. Lopes,* 760 F.2d 40, 45 (2d Cir.1985). To establish such cause, a petitioner must show that "some objective external factor impeded [her] ability to comply with the relevant procedural rule." *Wilson,* 2003 WL 22765351, at *3 (citing *Coleman v. Thompson,* 501 U.S. 722, 753, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991)); *Restrepo v. Kelly,* 178 F.3d 634, 638 (2d Cir.1999)). Examples of such "external factors" include "interference by officials," the ineffective assistance of counsel, or proof that "the factual or legal basis for a claim was not reasonably available" at the time of petitioner's trial or on direct appeal. *Wilson,* 2003 WL 22765351, at *3 (citing *Murray v. Carrier,* 477 U.S. 478, 488 (1986)); *see* *Bossett v. Walker,* 41 F.3d 825, 829 (2d Cir.1994) (citing *Murray* ); *United States v. Helmsley,* 985 F.2d 1202, 1206 (2d Cir.1992).

In the present action, Long has not offered any cause for her failure to preserve the above-referenced procedurally defaulted claims-all of which were based upon matters contained in the record-for review in her direct appeal of her conviction. Significantly, Long has never asserted, in the state courts or this action, that her trial counsel rendered ineffective assistance by his failure to object to either Parson's trial testimony or the manner in which the trial court described the allegations contained in the third count in the Indictment to the jury during the county court's instructions.[FN5] Nor has Long ever argued that her appellate counsel rendered ineffective assistance by failing to raise any of the claims Long asserted in her CPL 440.20 Motion on appeal.

> FN5. Long was represented by Eugene Grenz, Eq. at her criminal trial, and by Theresa M. Suozzi, Esq. on appeal.

Since Long has not established cause for her procedural default concerning these claims, this Court need not decide whether she suffered prejudice, because federal habeas relief is unavailable under this limited exception permitting review of procedurally barred claims unless *both* cause and prejudice is demonstrated.[FN6] *See* *Stepney,* 760 F.2d at 45; *D'Alessandro v. Fischer,* No. 01 CIV. 2551, 2005 WL 3159674, at *9 n. 10 (S.D.N.Y. Nov. 28, 2005) ("[a]s Petitioner has not shown cause for

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 1977435 (N.D.N.Y.)

(Cite as: 2006 WL 1977435 (N.D.N.Y.))

his default, this Court need not even reach the question of whether Petitioner can show prejudice") (citing *Stepney* ); *Moore v. Greiner,* No. 02 CIV.6122, 2005 WL 2665667, at *12 (S.D.N.Y. Oct.19, 2005) (citing *Stepney* ); *Lutes v. Ricks,* No. 02-CV-1043, 2005 WL 2180467, at *9 (N.D.N.Y. Sept. 9, 2005) (McAvoy, S.J.) (citing *Stepney* and *Jones v. Barkley,* No. 9:99-CV-1344, 2004 WL 437468, at *9 (N.D.N.Y. Feb.27, 2004) (Sharpe, J.) (collecting cases)); *Pou v. Keane,* 977 F.Supp. 577, 581 (N.D.N.Y.1997) (Kahn, J.).

> FN6. The petitioner bears the burden of demonstrating cause for her procedural default and resulting prejudice. *See Simpson v. Portuondo,* 01CIV.8744, 2002 WL 31045862, at *5 (S.D.N.Y. June 4, 2002).

**\*7** The finding that Long has failed to establish cause for her procedural default does not necessarily preclude this Court from considering her procedurally forfeited claims, however, because, as noted above, a federal court may nonetheless properly invoke habeas review as to such claims if the court is convinced of the petitioner's actual innocence. On this question, the Second Circuit has observed that:

> The Supreme Court has explained that the fundamental miscarriage of justice exception is "extremely rare" and should be applied only in "the extraordinary cases." *Schlup v. Delo,* 513 U.S. 298, 321-22, 115 S.Ct. 851, 130 L.Ed.2d 808 ... (1995). " "[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States,* 523 U.S. 614, 623, 118 S.Ct. 1604, 140 L.Ed.2d 828 ... (1998). "To establish actual innocence, [a] petitioner must demonstrate that, 'in light of all the evidence,' 'it is more likely than not that no reasonable juror would have convicted him.' " *Id.* (citing *Schlup,* 513 U.S. [at] 327-28 ... (some internal citation marks omitted)).

> *Sweet v. Bennett,* 353 F.3d 135, 142 (2d Cir.2003); *see also D'Alessandro,* 2005 WL 3159674, at *8; *Marengo,* 342 F.Supp.2d at 228. Thus, in considering whether a petitioner's procedural default may be excused under this "actual innocence" exception, federal courts are

to consider the sufficiency of the evidence offered against the petitioner at his or her trial. *Dixon,* 293 F.3d at 81.

Considering first Long's convictions for the crimes of first degree assault, this Court notes that "New York Penal Law § 120.10(1) provides that a person is guilty of first degree assault when, '[w]ith intent to cause serious physical injury to another person, he [or she] causes such injury to such person or to a third person by means of a deadly weapon or dangerous instrument." ' *Jackson v. Lacy,* 74 F.Supp.2d 173, 178 (N.D.N.Y.1999) (McAvoy, C.J.).

With respect to Long's assault conviction relating to Monell, the trial transcript reflects that soon after Monell observed Long firing her weapon at Parson, Monell heard Parson's friend, Charlene Gause, directing Parson to shoot Monell.FN7 Trial Tr. at 165. Soon thereafter, Monell discovered that she had been shot. Trial Tr. at 165-66. Additionally, a forensic detective with the Albany Police Department testified that the location of seven shell casings found at the crime scene was consistent with having been fired from the area where Long was observed standing by Monell and Parson. Trial Tr. at 270-77. The foregoing evidence amply supported the jury's finding that Long was guilty of the first degree assault of Monell.FN8

> FN7. Monell testified that on the date of the shooting, she inquired of Gause why she was asking Long to shoot Monell, however Gause responded by stating: "You better back up, you better back up." Trial Tr. at 165.

> FN8. Long never claimed in the state courts that the evidence at trial was insufficient to establish her guilt of the assault charge relating to Monell. *See* App. Br. In fact, at trial, Long's defense counsel conceded that there was "a factual basis to send that [charge] to the jury." Trial Tr. at 350-51.

As to Long's conviction on the first degree assault relating to Temple, after reviewing the relevant trial testimony relating to this charge, this Court adopts the Appellate Division's determination that the trial testimony "provided a valid line of reasoning and permissible

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 1977435 (N.D.N.Y.)

(Cite as: 2006 WL 1977435 (N.D.N.Y.))

inferences from which any rational trier of fact could find [Long] guilty beyond a reasonable doubt of all the essential elements of the crime of assault in the first degree" as to Temple. *See Long,* 291 A.D.2d at 722, 738 N.Y.S.2d 721.[FN9]

> **FN9.** This Court discusses in more detail the evidence adduced at trial relating to Long's conviction on the assault of Temple *infra* in conjunction with Long's habeas challenge relating to the trial court's failure to grant her motion to dismiss the count in the Indictment accusing petitioner of that crime.

**\*8** Turning to Long's conviction of second degree criminal possession of a weapon in conjunction with her assault on Monell, the Court notes that in New York, a person is guilty of that crime when, with the intent to use a weapon unlawfully against another, a person "possesses a loaded firearm." *See* New York Penal L. § 265.03. The evidence adduced at trial was more than sufficient to establish that on May 1, 1995, Long possessed a loaded firearm which she intended to use unlawfully with respect to Monell. *See, e.g.,* Trial Tr. at 134, 164-66.

In sum, after carefully considering this issue, this Court concludes that petitioner has failed to meet her burden of proving that she is actually innocent of any of the crimes of which she was convicted.[FN10] Therefore, this Court finds no basis to overlook Long's procedural default regarding the above-referenced claims, and accordingly denies her first, fourth and sixth grounds for relief (delineated by petitioner as Grounds "A," "D," and "F," respectively) as procedurally forfeited. *See, e.g., Lutes,* 2005 WL 2180467, at *9; *Ayuso v. Artuz,* No. 99 CIV 12015, 2001 WL 246437, at *8-9 (S.D.N.Y. Mar.7, 2001); *DeLeon v. Hanslmaier,* No. CV-94-5512, 1996 WL 31232, at *3-4 (E.D.N.Y. Jan.19, 1996), *aff'd,* 104 F.3d 355 (2d Cir.1996).

> **FN10.** The petitioner bears the burden of proving actual innocence where he or she seeks federal review of procedurally defaulted habeas claims. *E.g., Speringo v. McLaughlin,* 202 F.Supp.2d 178, 189 (S.D.N.Y.2002).

**C. *Remaining Claims***

**1. *Standard of Review***

Enactment of the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104-132, 110 Stat. 1214 (1996) ("AEDPA"), brought about significant new limitations upon the power of a federal court to grant habeas relief to a state prisoner under 28 U.S.C. § 2254. Under the AEDPA, a federal court cannot grant habeas relief to a state prisoner on a claim:

> that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-

> 1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> 2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *see also DeBerry v. Portuondo,* 403 F.3d 57, 66 (2d Cir.2005); *Miranda v. Bennett,* 322 F.3d 171, 177-78 (2d Cir.2003); *Boyette v. LeFevre,* 246 F.3d 76, 88 (2d Cir.2001). The AEDPA also requires that in any such proceeding "a determination of a factual issue made by a State court shall be presumed to be correct [and t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see also DeBerry,* 403 F.3d at 66; *Boyette,* 246 F.3d at 88 (quoting § 2254(e)(1)) (internal quotations omitted).

The Second Circuit has provided additional guidance concerning application of this test, noting that:

> [u]nder AEDPA, we ask three questions to determine whether a federal court can grant habeas relief: 1) Was the principle of Supreme Court case law relied upon in the habeas petition "clearly established" when the state court ruled? 2) If so, was the state court's decision "contrary to" that established Supreme Court precedent? 3) If not, did the state court's decision

constitute an "unreasonable application" of that principle?

**\*9** *Williams v. Artuz,* 237 F.3d 147, 152 (2d Cir.2001) (citing *Francis S. v. Stone,* 221 F.3d 100, 108-09 (2d Cir.2000)).

In *Sellan v. Kuhlman,* 261 F.3d 303, 309-10 (2d Cir.2001), the Second Circuit answered the question of whether deference under section 2254(d) is mandated if a state court decides a case without citing to federal law or otherwise making reference to a federal constitutional claim. Specifically, that court held that deference is required if the claim was presented to the state court and there was an adjudication on the merits, even though the state court's decision lacks explicit reference to the federal claim or to federal case law. *Sellan,* 261 F.3d at 311-12. As the Second Circuit explained, the plain meaning of § 2254(d)(1) dictates that:

> [f]or the purposes of AEDPA deference, a state court "adjudicate[s]" a state prisoner's federal claim on the merits when it (1) disposes of the claim "on the merits," and (2) reduces its disposition to judgment. When a state court does so, a federal habeas court must defer in the manner prescribed by 28 U.S.C. § 2254(d)(1) to the state court's decision on the federal claim-*even if the state court does not explicitly refer to either the federal claim or to relevant federal case law."*

*Sellan,* 261 F.3d at 312 (emphasis added), *see also Ryan v. Miller,* 303 F.3d 231, 246 (2d Cir.2002). When a state court's decision is found to be decided "on the merits," that decision is "contrary to" established Supreme Court precedent if it applies a rule that contradicts Supreme Court precedent, or decides a case differently than the Supreme Court on a set of materially indistinguishable facts. *Williams v. Taylor,* 529 U.S. 362, 405-06, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). A federal court engaged in habeas review is to determine not whether the state court's determination was merely incorrect or erroneous, but instead whether it was "objectively unreasonable." *Williams,* 529 U.S. at 409; *see also Sellan,* 261 F.3d at 315. The Second Circuit has noted that this inquiry admits of "[s]ome increment of

incorrectness beyond error," though "the increment need not be great[.]" *Francis S.,* 221 F.3d at 111.

2. *Substance of Long's Remaining Claims*

A. *Motion to Dismiss Indictment*

In her second ground for relief, Long argues that the trial court wrongfully failed to dismiss the third count in the Indictment despite the fact that insufficient evidence was adduced at trial establishing her guilt of that charge. *See* Petition, Ground B; Supporting Mem. at 7-10; *see also* Indictment, Count Three; App. Br. at 7-10.

At the close of the prosecution's proof, Long's counsel moved pursuant to CPL § 290.10 to dismiss, *inter alia,* Count Three of the Indictment, which accused Long of the first degree assault of Temple.[FN11] *See* Trial Tr. 351. The county court denied that application, concluding that there existed a sufficient factual basis to submit that Count to the jury for its consideration. Trial Tr. at 352.

> FN11. That procedure under the CPL, which is now referred to as a request for a trial order of dismissal, is derived from the prior practice utilized to secure the same result-the directed verdict of acquittal. *Faux v. Jones,* 728 F.Supp. 903, 907 (W.D.N.Y.1990) (citing CPL § 290.10).

**\*10** A motion under CPL § 290.10 must be denied where the trial evidence, when viewed in a light most favorable to the prosecution, is legally sufficient to support a guilty verdict. *People v. Phillips,* 256 A.D.2d 733, 734-35, 682 N.Y.S.2d 685 (3d Dept.1998) (citation omitted). A claim based upon a trial court's failure to dismiss a charge in an indictment is properly considered a challenge to the sufficiency of evidence relating to such charge. *See Gwathney v. Sabourin,* 269 F.Supp.2d 63, 66 (E.D.N.Y.2003); *Phillips,* 256 A.D.2d at 734-35, 682 N.Y.S.2d 685 (citation omitted). Accordingly, federal courts considering habeas claims premised upon a trial court's failure to dismiss one or more counts in an indictment must determine whether the state court's decision denying the motion to dismiss is contrary to, or involved an unreasonable application of, Supreme Court

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

case law governing evidence sufficiency claims. *E.g., Ubrich v. Murphy,* No. 98-CV-0655, slip op. at 41 (N.D.N.Y. Apr. 4, 2003) (Peebles, M.J.), *adopted,* No. 98-CV-0655, Dkt. No. 28, slip op. at 2 (N.D.N.Y. May 13, 2003) (Scullin, C.J.).

i. *Clearly Established Supreme Court Precedent*

The Due Process Clause of the Fourteenth Amendment protects a defendant in a criminal case against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crimes with which he or she is charged. *See Fiore v. White,* 531 U.S. 225, 228-29, 121 S.Ct. 712, 148 L.Ed.2d 629 (2001); *Jackson v. Virginia,* 443 U.S. 307, 315, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *In re Winship,* 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). This inquiry "does not focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a rational decision to convict or acquit." *Herrera v. Collins,* 506 U.S. 390, 402, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993). A habeas petitioner claiming that there was insufficient evidence supporting a challenged conviction is entitled to relief under 28 U.S.C. § 2254 only if it is found "that upon the record evidence adduced at trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Jackson,* 443 U.S. at 324; *see also Schlup,* 513 U.S. at 323 n. 38; *United States v. Powell,* 469 U.S. 57, 67, 105 S.Ct. 471, 83 L.Ed.2d 461 (1984) (citations omitted). Moreover, in reviewing the record, the court is required to consider the evidence in the light most favorable to the prosecution, and draw all inferences in its favor. *Jackson,* 443 U.S. at 319.

ii. *Contrary To, or Unreasonable Application Of, Clearly Established Supreme Court Precedent*

The trial evidence established that on May 1, 1995, Traynham and Temple were across the street from the TC Club. Trial Tr. at 293. Soon after Traynham went into a nearby store, he heard gunshots. Trial Tr. at 293-94. Around that same time, both Parson and Monell observed Long near the TC Club brandishing a gun. Trial Tr. at 132, 163-64. Long was observed firing the weapon at Parson, Trial Tr. at 163-64, and around that same time Temple, who was near the TC Club on that date, sustained a life-threatening gunshot wound. Trial Tr. at 188-89, 294.

Additionally, seven 9 mm shell casings were found in the area where Long was observed by Monell and Parson holding a gun, Trial Tr. at 270-77, evidence which strongly suggested that Long fired her weapon multiple times. The foregoing evidence, viewed collectively, is more than sufficient to surpass the relatively modest hurdle imposed by *Jackson* with respect to Long's conviction on the first degree assault charge relating to Temple. Therefore, this Court concludes that Long has not demonstrated that the Appellate Division's decision denying the aspect of her appeal which challenged the denial of her motion to dismiss the third count in the Indictment due to evidence insufficiency, *see Long,* 291 A.D.2d at 721-22, 738 N.Y.S.2d 721, is either contrary to, or involves an unreasonable application of, *Jackson* and its progeny. This Court accordingly denies her second ground for relief.

B. *Repugnant / Inconsistent Verdict*

**\*11** As noted above, the jury acquitted Long of the attempted murder charge relating to Monell (Count One), as well as the weapons possession charge which accused her of possessing a firearm and intending to use same unlawfully as to Temple (Count Five). *See* Trial Tr. at 652-55.

Long argues in this proceeding, as she did in state court, that the jury's verdict is repugnant because she was acquitted of the charge which accused Long of criminally possessing a weapon but convicted of the assault charge as to Temple, which required, *inter alia,* a finding by the jury that Long used a firearm in conjunction with such assault. *See* Petition, Ground C; Supporting Mem. at 11-15; *see also* App. Br. at 11-15; Indictment, Counts Three, Five.

i. *Clearly Established Supreme Court Precedent*

In *Dunn v. United States,* 284 U.S. 390, 52 S.Ct. 189, 76 L.Ed. 356 (1932), the Supreme Court opined that:

The most that can be said in [ ] cases [in which the jury renders an inconsistent verdict] is that the verdict shows that either in the acquittal or the conviction the jury did not speak their real conclusions, but that does not show that they were not convinced of the defendant's guilt. We interpret the acquittal as no more than their assumption of a power which they had no right to exercise, but to which they were disposed

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 1977435 (N.D.N.Y.)

(Cite as: 2006 WL 1977435 (N.D.N.Y.))

through lenity.

*Dunn,* 284 U.S. at 393 (internal quotation and citation omitted); *see also Powell,* 469 U.S. at 64-65 (quoting *Dunn* ). Since the Government is unable to seek review of the portion of the verdict that acquits a defendant due to the Double Jeopardy Clause of the United States Constitution, it is "unclear whose ox has been gored" by an inconsistent verdict. *Powell,* 469 U.S. at 65-66 (footnote omitted). Consequently, the Supreme Court has held that inconsistent verdicts are generally enforceable and not subject to judicial review. *See Powell,* 469 U.S. at 65-66; *Bradshaw v. Stumpf,* 545 U.S. 175, 125 S.Ct. 2398, 2409, 162 L.Ed.2d 143 (2005) ("inconsistent jury verdicts may be enforced") (citing *Powell, Dunn* ) (Souter and Ginsburg, concurring); *Dowling v. United States,* 493 U.S. 342, 353-54, 110 S.Ct. 668, 107 L.Ed.2d 708 (1990) ("inconsistent verdicts are constitutionally tolerable") (citation omitted); *Harris v. Rivera,* 454 U.S. 339, 345, 102 S.Ct. 460, 70 L.Ed.2d 530 (1981) ("[i]nconsistency in a verdict is not a sufficient reason for setting it aside").

ii. *Contrary To, or Unreasonable Application of, Supreme Court Precedent*

In denying Long's appellate claim relating to the alleged inconsistency of the jury's verdict, the Appellate Division opined:

Defendant reasons that she cannot be guilty of shooting Temple if the jury also determined that she did not possess a gun. However, it is equally possible that the verdict resulted from the jury's assessment that, although she possessed a loaded handgun, she did not have the intent to use it unlawfully against Temple (*see,* Penal Law § 265.03[2] ). The jury could have determined that she acted recklessly by creating a grave risk of death to Temple causing serious physical injury (*see,* Penal Law § 120.10[3] ). Therefore, "[t]he acquittal of the former ... did not negate [any] elements of the latter [.]" Where, as here, a rational theory exists to support each verdict, the jury's determination will not be disturbed.

**\*12** *Long,* 291 A.D.2d at 722-23, 738 N.Y.S.2d 721 (citation to case law omitted). Thus, the Third Department

found that the jury's verdict was not, in fact, inconsistent.

Since the present habeas claim is rooted in the assumption that the jury's verdict was repugnant, *see* Petition, Ground C, this Court initially considers whether the verdict was, in fact, inconsistent.

In instructing the jury on the first degree assault charge relating to Monell, the trial court charged the jury that the prosecution was required to establish that on or about May 1, 1995, Long, "did, with intent to cause serious physical injury to another person, cause[ ] such injury to such person ... by means of a deadly weapon." Trial Tr. at 613-14. In sharp contrast to that charge, when instructing the jury as to the first degree assault charge relating to Temple, the county court instructed the jury that the prosecution was required to establish that on or about May 1, 1995, "under circumstances evincing a depraved indifference to human life, [Long] recklessly engaged in conduct which created a grave risk of death to another person, and thereby caused serious physical injury to another person." Trial Tr. at 616-17. Thus, unlike the assault charge relating to Monell, the jury was *not* required to find that Long *intended* to cause serious physical injury to Temple in considering whether she was guilty of that assault charge. Both weapons possession charges, however, required the jury to find, *inter alia,* that Long possessed a firearm *with the intent to use that weapon unlawfully. See* Trial Tr. at 622, 624 (weapons possession charge relating to Monell); Trial Tr. at 626-28 (weapons possession charge relating to Temple). Thus, unlike the assault charge relating to Temple, the jury was instructed that it could *only* find Long guilty of the weapons possession charge relating to that victim if it found, *inter alia,* that: "she possessed [a loaded pistol] *with intent to use it unlawfully against ... Robert Temple.*" Trial Tr. at 627.

Under New York law, "[t]wo counts are 'inconsistent' when guilt of the offense charged in one necessarily negates guilt of the offense charged in the other." CPL § 300.30(5). "Whether verdicts are repugnant or inconsistent ... is determined by examining the charge to see the essential elements of each count, as described by the trial court, and determining whether the jury's findings on those elements can be reconciled." *People v. Loughlin,* 76

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 1977435 (N.D.N.Y.)

(Cite as: 2006 WL 1977435 (N.D.N.Y.))

N.Y.2d 804, 806, 559 N.Y.S.2d 962, 559 N.E.2d 656 (1990) (citing *People v. Tucker,* 55 N.Y.2d 1, 6-7, 447 N.Y.S.2d 132, 431 N.E.2d 617 (1981)).

In the state court matter below, the Appellate Division determined that the jury could have properly found both: i) that Long acted recklessly when she shot Temple, thereby creating a grave risk of death to him and causing him serious physical injury; and ii) that although Long possessed a loaded handgun on May 1, 1995, she did not *intend* to use it unlawfully against Temple. [FN12] *Long,* 291 A.D.2d at 722-23, 738 N.Y.S.2d 721. This Court agrees with the Third Department's determination that the jury's verdict was in no way inconsistent or repugnant. Thus, Long cannot prevail on her third ground for relief, which is premised upon the assumption that the jury's verdict was inconsistent.

> FN12. Unlike the evidence adduced at trial regarding shooting victim Monell, the testimony adduced at trial established that Temple merely happened to be a bystander near the TC Club at the time Long fired her weapon. Trial Tr. at 293-94.

*13 Additionally, as noted above, the Supreme Court has held that inconsistent verdicts are generally enforceable and not subject to judicial review. *See Powell,* 469 U.S. at 65-66. Since an allegedly inconsistent verdict is not a sufficient reason for setting it aside, *Harris,* 454 U.S. at 345, the Appellate Division's decision denying this aspect of Long's appeal is neither contrary to, nor an unreasonable application of, the above-referenced Supreme Court authority. Therefore, for this reason as well, this Court must deny Long's third ground for relief. *E.g., Brunson v. Tracy,* 378 F.Supp.2d 100, 110 (E.D.N.Y.2005) ("[i]t is well-settled that federal habeas relief is unavailable for inconsistent verdicts") (citations omitted); *Vassell v. McGinnis,* No. 04-CV-0856, 2004 WL 3088666, at *6 (E.D .N.Y. Dec. 22, 2004); *Muldrow v. Herbert,* 299 F.Supp.2d 166, 170 (W.D.N.Y. Feb.3, 2004) ("an allegedly inconsistent verdict does not present a constitutional violation. Therefore, such a claim is not even cognizable on habeas review"), *appeal dismissed,* No. 04-1839pr (2d Cir. Jan. 20, 2005).

## C. *Harsh and Excessive Sentence*

In her fifth claim, Long alleges that in light of her age, background, familial obligations and lack of criminal history, the sentence imposed on her was harsh and excessive.[FN13] Petition, Ground E. She further alleges that the sentences "violate[ ] New York State and Federal Sentencing Guidelines." Petition, Ground E.

> FN13. This claim was asserted by Long in her direct appeal. *See* App. Br. at 20-24.

These claims, however, fail to acknowledge the established authority which holds that "[n]o federal constitutional issue is presented where ... the sentence is within the range prescribed by state law." *White v. Keane,* 969 F.2d 1381, 1383 (2d Cir.1992) (citing *Underwood v. Kelly,* 692 F.Supp. 146 (E.D.N.Y.1988), *aff'd mem., 875 F.2d 857 (2d Cir.1989)); see also Brown v. Donnelly,* 371 F.Supp.2d 332, 343-44 (W.D.N.Y.2005); *Jackson,* 74 F.Supp.2d at 181 ("[i]t is well-settled ... that a prisoner may not challenge the length of a sentence that does not exceed the maximum set by state law"). Although petitioner now claims that the sentences imposed on her were illegal, *see* Petition, Ground E, the Court notes that in Long's direct appeal, appellate counsel explicitly acknowledged that the sentences imposed on her client were authorized by New York law. *See, e.g.,* App. Br. at 20 (counsel conceding that the imposed sentences were "authorized by law").

Moreover, the Court's review of Long's sentences establishes that the imposed sentences were consistent with New York Penal Law. For example, Long was sentenced to terms of five to fifteen years imprisonment on each of her first degree assault convictions. *See* Record at 130-31. The Appellate Division has specifically noted that such a sentence for a conviction of that crime is "within permissible statutory ranges" in New York. *See People v. Duncan,* 279 A.D.2d 887, 889, 720 N.Y.S.2d 578 (3d Dep't), *leave denied,* 96 N.Y.2d 828, 729 N.Y.S.2d 448, 754 N.E.2d 208 (2001). Similarly, Long's sentence of five to fifteen years imprisonment on her weapons possession conviction, Record at 131, has been explicitly acknowledged as authorized under New York law. *See People v. Rodriguez,* 276 A.D.2d 326, 326-27, 714 N.Y.S.2d 267 (1st Dep't 2000), *leave denied, People v.*

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 1977435 (N.D.N.Y.)

(Cite as: 2006 WL 1977435 (N.D.N.Y.))

Rodriguez, 96 N.Y.2d 738, 722 N.Y.S.2d 805, 745 N.E.2d 1028 (2001).FN14

> FN14. As to Long's claim relating to the United States Sentencing Guidelines, see Petition, Ground E, the Court finds that Long has not articulated how the United States Sentencing Guidelines are germane, in any way, to her convictions, which arose out of state court prosecutions based upon Long's violation of New York's penal laws.

**\*14** With respect to the consecutive nature of the sentences imposed on Long regarding the first degree assault convictions,FN15 this Court notes that the discretionary power of trial courts in New York "includes the ability to impose consecutive penalties for multiple crimes." People v. Ramirez, 89 N.Y.2d 444, 450, 654 N.Y.S.2d 998, 677 N.E.2d 722 (1996) (citing Matter of Walker v. Walker, 86 N.Y.2d 624, 629, 635 N.Y.S.2d 152, 658 N.E.2d 1025 (1995)) (other citation omitted). "[E]ven if the statutory elements of multiple offenses overlap, sentences may be imposed to run consecutively when multiple offenses are committed through separate and distinct acts, though they are part of a single transaction." Ramirez, 89 N.Y.2d at 451, 654 N.Y.S.2d 998, 677 N.E.2d 722 (citing People v. Laureano, 87 N.Y.2d 640, 643, 642 N.Y.S.2d 150, 664 N.E.2d 1212 (1996)) (other citation omitted).

> FN15. The trial court imposed consecutive sentences with respect to the assault convictions; the sentence on the weapons possession conviction was ordered to run concurrent with the other sentences imposed by the county court. Record at 130-31.

Long's assault on two different victims-Monell and Temple-clearly constitutes separate acts which permitted the county court to impose consecutive sentences. See DeSordi v. Walker, No. 98-CV-1351, slip op at 31-32 (N.D.N.Y. Mar. 7, 2002) (Sharpe, M.J.) ("the stabbing of separate victims clearly constituted separate acts, [rendering permissible] the imposition of consecutive sentences") (citations omitted), adopted DeSordi v. Walker, No. 98-CV-1351 (N.D.N.Y. July 30, 2002)

(Kahn, J.), aff'd, 84 Fed.Appx. 160 (2d Cir. Jan.12, 2004), cert. denied sub nom. DeSordi v. Burge, 543 U.S. 811, 125 S.Ct. 44, 160 L.Ed.2d 15 (2004). Thus, the sentences imposed on Long, including the consecutive nature of some of those sentences, are clearly permitted by state law.

Arguably, this ground could be construed as a claim that the imposed sentences constitute a violation of the Eighth Amendment to the United States Constitution, which prohibits the imposition of a sentence that is "grossly disproportionate to the severity of the crime." Rummel v. Estelle, 445 U.S. 263, 271, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980). However, "[o]utside the context of capital punishment, successful challenges to the proportionality of particular sentences have been exceedingly rare." Rummel, 445 U.S. at 272; see Harmelin v. Michigan, 501 U.S. 957, 995, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991) (Eighth Amendment only forbids sentences which are "grossly disproportionate" to the crime). Sentences of imprisonment that are within the limits of valid state statutes are simply not cruel and unusual punishment in the constitutional sense. Brumfield v. Stinson, 297 F.Supp.2d 607, 622 (W.D.N.Y.2003) (citing Thompson v. Lord, No. 97-CV-0792, 2002 WL 31678312, at *8 (N.D.N.Y. Nov. 8, 2002) (Peebles, M.J.)) (other citations omitted) [, adopted, Thompson v. Lord, No. 97-CV-0792 (Dkt. No. 19) (N.D.N.Y. Sept. 25, 2003) (Scullin, C.J.) ].

Long has not provided anything in support of her petition which suggests that either the terms of imprisonment or consecutive nature of the sentences imposed on her is "grossly disproportionate" to her crimes. E.g., Harmelin, 501 U.S. at 995. This Court therefore finds no basis upon which it may properly find that Long is entitled to habeas relief due to the sentences she received as a consequence of her convictions and accordingly denies ground E in her petition.

D. Failure to Consider Appeal of Denial of CPL 440.20 Motion

**\*15** In her seventh and final ground, petitioner argues that although the Third Department granted her leave to appeal the denial of her CPL 440.20 Motion, that court

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

nevertheless "refused to hear [s]aid motion" in violation of her constitutional rights. *See* Petition, Ground "G." [FN16]

[FN16.] In her seventh ground for relief, Long also refers to a "reconsideration motion." *See* Petition, Ground G. None of the state court records provided to this Court reflect any motion for reconsideration. Thus, it appears as though Long's reference to a "reconsideration motion" merely constitutes a typographical error on the part of petitioner.

This claim appears to allege that the Third Department wrongfully determined that Long failed to assert any appellate claim relating to her CPL 440.20 Motion and had therefore abandoned those claims. *See Long,* 291 A.D.2d at 721, 738 N.Y.S.2d 721. Therefore, this Court briefly reviews Long's CPL 440.20 Motion, together with the claims raised in her appellate brief, in order to ascertain whether the Third Department's determination that Long abandoned any appellate claim relating to the denial of her CPL 440.20 Motion is supported by the record.

Long's CPL 440.20 Motion alleged that the county court's imposition of consecutive sentences violated: i) the provisions of both the federal and New York State constitutions which prohibit individuals from being placed in Double Jeopardy; and ii) New York's Penal Law which addresses the issue of when a trial court may properly impose consecutive sentences. *See* CPL 440.20 Motion. Although Long's appellate brief made one brief reference to the CPL 440.20 Motion filed by Long, *see* App. Br. at 21, that brief never referred to any of the arguments asserted in the CPL 440.20 Motion. Nor did that brief incorporate by reference any of the claims asserted in that motion. *See* App. Br. Thus, the appellate brief never asserted as a basis for relief any claim that the sentences imposed on Long violated the Double Jeopardy clauses of either the state or federal constitutions, or which argued that the consecutive nature of the sentences rendered them illegal under New York law.[FN17] *See* App. Br. Rather, the portion of the appellate brief which challenged the sentences imposed on Long was limited to an argument that the sentences were harsh and excessive. *See* App. Br. at 20-24.

[FN17.] As noted *ante* by this Court in addressing Long's claim that the imposed sentences were harsh and excessive, appellate counsel *conceded* in her brief that the sentences imposed by the trial court were "authorized by law." *See* App. Br. at 20.

The foregoing conclusively establishes that although Long was afforded the opportunity to challenge the denial of her CPL 440.20 Motion on appeal, appellate counsel chose, apparently for strategic reasons, to refrain from asserting any claims relating to the denial of that motion in counsel's direct appeal of Long's conviction. Thus, to the extent Long now seeks federal habeas relief based upon a claim that the Appellate Division erred in either: i) concluding that Long failed to assert any of the claims raised by her in her CPL 440.20 Motion on appeal; or ii) deeming Long to have abandoned those claims, this Court finds such claims to be contradicted by the record and entirely without merit.

### III. *CONCLUSION*

After carefully considering all of the submissions before the Court, the undersigned concludes that Long has procedurally defaulted on her claims which allege that: i) she was denied her right to a fair because testimony relating to an uncharged crime was admitted into evidence against her at trial; ii) the trial court mischaracterized the allegations asserted against her in Count Three of the Indictment; and iii) her sentences are illegal and violative of both the federal and New York state constitutions. Since petitioner has not established cause for her procedural default concerning such claims or that she is actually innocent of any of the crimes of which she stands convicted, this Court denies those claims as procedurally barred. Furthermore, after considering the remaining grounds raised by Long in her petition, this Court finds that such claims lack merit and do not afford Long a basis for federal habeas relief. Thus, those claims are denied on the merits.

**\*16** IT IS THEREFORE HEREBY

ORDERED, that Long's habeas petition (Dkt. No. 1) is DENIED and DISMISSED, and it is further

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 1977435 (N.D.N.Y.)

(Cite as: 2006 WL 1977435 (N.D.N.Y.))

ORDERED, that the Clerk of Court serve a copy of this Memorandum-Decision and Order upon the parties to this action by regular or electronic mail, and it is further

ORDERED, that the state court records be returned directly to the Attorney General at the conclusion of these proceedings (including any appeal of this Memorandum-Decision and Order filed by any party).

IT IS SO ORDERED.

N.D.N.Y.,2006.

Long v. Lord
Not Reported in F.Supp.2d, 2006 WL 1977435 (N.D.N.Y.)
END OF DOCUMENT

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.